HART v. THE CHICAGO & N. W. R'Y Co.

1. **Railroads:** INSURERS OF GOODS CARRIED: LOSS BY ACT OF OWNER. While a carrier is held to be an insurer of the safety of property while he has it in his possession as a carrier, the rule does not apply where the goods were transported in a car which was left in the exclusive control of the shipper's agent, and they were destroyed by his act; and in such case it is immaterial whether the agent was careful or negligent.

2. ——: ——: ——: VOID CONTRACT OF EXEMPTION. It is immaterial, also, in such case, that the owner's agent accompanied the goods under a provision in a contract exempting the carrier from liability, and which was void under § 1308 of the Code.

3. ———: CONTRACT LIMITING LIABILITY OF CARRIER: CODE, § 1308.
   Under § 1308 of the Code, a contract between a railroad company
   and a shipper of horses, limiting the liability of the company for the
   horses to an amount less than their actual value, is invalid.

4. ———: ———: ———: CONSTITUTIONALITY: INTER-STATE COM-
   MERCE. Section 1308 of the Code, whereby all contracts by which car-
   riers seek to limit their liability as such are declared to be invalid, is
   not repugnant to the constitution of the United States, as being a reg-
   ulation of commerce between the states, when the contract relates to a
   shipment of goods from this state to another. See authorities cited in
   opinion.

*Appeal from Polk Circuit Court.*

MONDAY, OCTOBER 11.

ON the eighteenth day of April, 1883, plaintiff delivered
to defendant, at the city of Des Moines, one car-load of prop-
erty, which the latter undertook to transport to the town of
Miller, in Dakota territory. The property shipped in the
car consisted of six horses, two wagons, three sets of harness,
a quantity of grain, a lot of household and kitchen furni-
ture, and personal effects. The contract under which the
shipment was made provided that the horses should be loaded,
fed, watered and cared for by the shipper at his own expense,
and that one man in charge of them would be passed free on
the train that carried the car. It also provided that no lia-
bility would be assumed by the defendant on the horses for
more than $100 each, unless by special agreement noted on
the contract, and no such special agreement was noted on the
contract. Plaintiff placed a man in charge of the horses,
and he was permitted to, and did, ride in the car with them.
When the train reached Bancroft, in this state, it was discov-
ered that the hay which was carried in the car to be fed to
the horses on the trip was on fire. The car was broken open,
and the man in charge of the horses was found asleep. The
train men and others present attempted to extinguish the fire,
but before they succeeded in putting it out the horses were
killed, and the other property destroyed: This action was

brought to recover the value of the property. There was a verdict and judgment for plaintiff, and defendant appeals.

*Hubbard, Clark & Dawley* and *Whiting S. Clark,* for appellant.

*Baylies & Baylies* and *Hugh Brennan,* for appellee.

REED, J.—I. There was evidence which tended to prove that the fire was communicated to the car from a lantern

1. RAILROADS: insurers of goods carried: loss by act of owner. which the man in charge of the horses had taken into the car. This lantern was furnished by plaintiff, and was taken into the car by his direction. Defendant asked the circuit court to instruct the jury that if the fire which destroyed the property was caused by a lighted lantern in the sole use and control of plaintiff's servant, who was in the car in charge of the property, plaintiff could not recover. The court refused to give this instruction but told the jury that, if the fire was occasioned by the fault or negligence of plaintiff's servant, who was in charge of the property, there could be no recovery. The jury might have found from the evidence that the fire was communicated to the hay from the lantern, but that plaintiff's servant was not guilty of any negligence in the matter. The question presented by this assignment of error, then, is whether a common carrier is responsible for the injury or destruction of property while it is in the course of transportation, when the injury is caused by some act of the owner, but which is unattended with any negligence on the part of the owner.

The carrier is held to be an insurer of the safety of the property while he has it in possession as a carrier. His undertaking for the care and safety of the property arises by the implication of law out of the contract for its carriage. The rule which holds him to be an insurer of the property is founded upon considerations of public policy. The reason of the rule is that, as the carrier ordinarily has the absolute

possession and control of the property while it is in course of shipment, he has the most tempting opportunities for embezzlement or for fraudulent collusion with others. Therefore, if it is lost or destroyed while in his custody, the policy of the law imposes the loss upon him. *Coggs v. Bernard*, 2 Ld. Raym., 909; *Forward v. Pittard*, 1 Durn. & E., 27; *Riley v. Horne*, 5 Bing., 217; *Thomas v. Railway Co.*, 10 Metc., 472; *Roberts v. Turner*, 12 Johns., 232; *Moses v. Railway Co.*, 24 N. H., 71; *Rixford v. Smith*, 52 Id., 355. His undertaking for the safety of the property, however, is not absolute. He has never been held to be an insurer against injuries occasioned by the act of God, or the public enemy, and there is no reason why he should be; and it is equally clear, we think, that there is no consideration of policy which demands that he should be held to account to the owner for an injury which is occasioned by the owner's own act; and whether the act of the owner by which the injury was caused amounted to negligence is immaterial also. If the immediate cause of the loss was the act of the owner, as between the parties, absolute justice demands that the loss should fall upon him, rather than upon the one who has been guilty of no wrong; and it can make no difference that the act cannot be said to be either wrongful or negligent. If, then, the fire which occasioned the loss in question was ignited by the lantern which plaintiff's servant, by his direction, took into the car, and which, at the time, was in the exclusive control and care of the servant, defendant is not liable, and the question whether the servant handled it carefully or otherwise is not material. This view is abundantly sustained by the authorities. See Hutch. Carr., § 216, and cases cited in the note; also Lawson Carr., §§ 19, 23.

II. Section 1308 of the Code is as follows: "No contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier, or carrier of passengers, which would exist had

2. ——: ——: void contract of exemption.

no contract, receipt, rule or regulation been made or entered into." Counsel for plaintiff contend that the provision of the shipping contract, by which plaintiff undertook to care for the horses while they were being transported, is in violation of this section, and consequently is void. For the purposes of the case this may be conceded, and yet it does not follow that defendant is liable for the loss, if it was caused by plaintiff's act. If it should be conceded that defendant was responsible for the proper care of the property while it was being transported, it would follow only that plaintiff was an intermeddler in placing his servant in the car, and in assuming to care for it. If the injury was caused by his act, it is immaterial whether he was proceeding under a valid contract, or as an officious volunteer, in doing the act.

III. The evidence tended to prove that two of the horses were worth $150 each, and that two others were worth $125 each, and that the others were worth $100 each. Defendant asked the circuit court to instruct the jury that under the contract defendant's liability for the horses could not exceed $100 per head. The court refused to give this instruction; and ruled that, if plaintiff was entitled to recover, the jury should award him the full value of the property. Whether a common carrier, in the absence of any statute restricting his powers in that respect, can, by rule, regulation or contract, limit his liability for the property received by him for carriage, has been the subject of much discussion, and there is great conflict in the decision of the courts on the question. We have no occasion, however, in this case, to enter into that question. No one would question that, in the absence of a contract limiting the amount of his liability, the shipper would be entitled, in case of the destruction or injury of the property under such circumstances as that the carrier was liable for the loss, to recover full compensation for injuries sustained. The statute quoted above prohibits the making of any contract that would exempt him from the liability of a common carrier which would

3. ———: contract limiting liability of carrier: code, § 1308.

exist if no contract, rule or regulation existed.   If the stat-
ute is applicable to a contract in which the undertaking is to
transport the property from this state into another state or
territory of the United States, it cannot be doubted, we think,
that the provision of the contract in question, by which it
was sought to limit the liability of defendant for the horses
to an amount less than the actual value of the property, is
repugnant to its provisions, and consequently invalid.

It is contended, however, that the state has no power to
place a restriction of that character upon the carrier who con-
tracts for the transportation of property from
this state into another state or territory.   The
position is that the restriction, if applicable to a
contract of this character, would be a regulation of commerce
among the states,—a subject, which, under the federal consti-
tution, is within the exclusive jurisdiction of the congress
of the United States.   In our opinion, however, this position
cannot be maintained.   The provision is in no just or legal
sense a regulation of commerce.   It prescribes no regulation
for the transportation of freight upon any of the channels of
communication.   It leaves the parties free to make such con-
tracts as they may choose to make with reference to the com-
pensation which shall be paid for the services to be rendered.
The carrier is left free to demand such compensation for the
carriage of the property as is just, considering the responsi-
bility he assumes when he receives it.   He is forbidden to
make any contract that would exempt him from any of the
liabilities which arise by implication from his undertaking to
carry the property.   But no burden is placed upon the prop-
erty which is the subject of the contract; nor is any rule pre-
scribed for his government respecting it.   That it is within
the power of the state to prescribe such a limitation upon his
power to contract, we have no doubt.   The statute was en-
acted by the state in the exercise of the police power with
which it is vested, and it is applicable to all contracts entered
into within its jurisdiction.   The question involved is not

4. ——: ——:
——: con-
stitutionality:
inter-state
commerce.

different in principle from that decided by the supreme court of the United States, in what are known as the *Granger Cases*. See *Munn v. Illinois*, 94 U. S., 113; *Chicago, B. & Q. R'y Co. v. Iowa*, Id., 155; *Peik v. Chicago & N. W. R'y Co.*, Id., 164.

The judgment of the circuit court will be

REVERSED.