147 ‾‾‾‾ 343
22 SC ²346

# Long, Appellant, *v.* Pennsylvania R. R. Co.

[Marked to be reported.]

• *Common carrier—Baggage—Act of God.*

It is a complete defence to an action against a common carrier for loss of baggage to show that the baggage was destroyed by a flood of such unprecedented character as could neither have been anticipated nor provided against, and which amounted to an act of God.

*Johnstown flood—Destruction of the Day Express.*

The destruction of the Day Express on May 31, 1889, at Conemaugh by the Johnstown flood was an act of God.

*Negligence—Presumption—Evidence.*

Where an accident by which baggage is lost, in the hands of a common carrier, is not due to the failure of any of the appliances of transportation, but to flood, amounting to an act of God, there is no presumption of negligence which will shift the burden of proof upon the carrier to show that he was not negligent.

In such a case where there is no evidence of want of care on the part of the employees of the common carrier, it is proper for the court to give binding instructions for the defendant.

Argued Jan. 13, 1892. Appeal, No. 185, July T., 1891, by plaintiff, Thomas L. Long, from judgment of C. P., No. 4, Phila. Co., June T., 1889, No. 310, on verdict for defendant.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOL-
LUM and MITCHELL, JJ.

Trespass to recover damages for loss of baggage.   The facts
appear by the opinion of the Supreme Court.   The court gave
binding instructions for defendant.

Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was the charge directing the jury to find for
the defendant.

*D. Webster Dougherty,* for appellant.—The defendants testi-
mony failed to establish that the breaking of the dam and the
consequent flood was the act of God.   A common carrier is a
virtual insurer against all risks of loss or injury, save those by
act of God or the public enemy.   Schuler on Bailments, 386.
It was essential to prove that the flood was an act of God.

Even if the breaking of the dam was the act of God, the de-
fendant cannot be relieved from liability if it failed to exercise
the care and skill required under the extraordinary circum-
stances with which it was confronted.   Morrison v. Davis, 20
Pa. 177 ; Hays v. Kennedy, 41 Pa. 384.

The case was one for the jury : Penna. R. R. v. Milton, 87 Pa.
399 ; Penna. R. R. v. Weiss, 87 Pa. 447 ; Penna. R. R. v. Mil-
ler, 87 Pa. 395 ; Speer v. P. W. & B. R. R., 119 Pa. 61 ; Kelly
v. McGeehee, 137 Pa. 443.

*David W. Sellers,* for appellee.—A carrier is not liable for
loss or damage caused by the act of God.   The act of God
is natural necessity.   Accidents produced by physical causes
which are irresistible, as, for example, winds and storms or a
sudden gust of wind, by lightning, inundations, or earthquake,
sudden death or illness, are occasioned by the act of God, and
the carrier is excused.   1 Chitty on Common Carriers, 36 ;
Coggs v. Bernard, 1 Smith's Leading Cases, 315–318.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

This is what, under the practice prior to 1887, would have
been called an action of trover.   It is brought to recover the
value of two trunks and their contents delivered to the defend-
ant company in Cincinnati for transportation to Washington.
When the plaintiff presented his baggage checks at the defend-
ant's station in Washington, and asked for his trunks, they
were not delivered.   This action was then brought.   The

course of the trial is shown by the opening paragraph in the printed argument of the appellant.   It is as follows: "It was conceded by the defendant that plaintiff's goods were duly received by it, to be forwarded from Cincinnati to Washington; and it was conceded by the plaintiff that the goods were on the day express, which was destroyed by the flood from the South Fork dam, at Conemaugh, on May 31, 1889." It only remained for the plaintiff to show the value of his goods in order to complete his case.   For the defendant it was necessary to supplement the admission by proof showing that the flood was of such extraordinary character that it was not bound to anticipate or provide against it; and that it came with such suddenness and power that escape from it was impossible. Several witnesses were called by the defendant for this purpose.   They repeated the story of the great rain storm that preceded the bursting of the South Fork dam ; of the rapidly rising river, spreading beyond its banks, and inundating portions of the city of Johnstown ; of landslides and other difficulties that beset the movement of trains ; of the running of the ill-fated Day Express into the yard at Conemaugh for safety and to await orders ; and then of the appalling wall of water that came moving down the narrow valley, sweeping away whatever was in its path, trees and dwellings, mills and factories, engines and cars, with a fury that was absolutely resistless. The officers and agents of the defendant at Pittsburgh, and at Johnstown and Conemaugh, on whom the movement of trains depended, were called and testified to the precautions taken to guard against accident to the trains under their control.   They told of the information that came to them, of the dangers they knew to exist, and those they apprehended as probable, and what efforts they made to escape them, and secure safety for their passengers, their employees, and the freight with which their cars were laden.   It was not denied on the trial, and it could not be upon the evidence before us, that these officers and agents did what they fully believed was the best thing to do, as they understood the situation.   Not a witness was called by the plaintiff to testify to any act or omission by the defendant's agents or employees, from which want of care could be inferred; but the case was left where the testimony of the defendant's witnesses left it.   There was, then, no question of

credibility to be settled, and no conflict in the evidence.   The case depended on the effect of the admissions and the uncontroverted testimony.   The defendant admitted the contract to carry and the receipt of the goods, and excused the non-delivery by showing their destruction in a flood of such unprecedented character as it could neither be expected to foresee nor provide against.   This made a complete defence, and it was proper for the judge to say so; and, as no single fact in the series was controverted, it was right for him to direct the verdict.

But the able counsel for the plaintiff insists that, in this case, there was a legal presumption of negligence in the carrier that took the question to the jury under the authority of Speer v. Phila. W. & B. R. R. Co., 119 Pa. 61, and kindred cases.   We do not think so.   Speer was a passenger on board the defendant's boat.   After the carriage actually began, an explosion took place on the boat, by which he was injured.   The plaintiff proved the happening of the accident to the boat, and the injury to Speer in consequence of it, and rested.   This raised a legal presumption of negligence that entitled the plaintiff to recover.   The onus was then on the defendant to show affirmatively that the explosion was not due to its want of care in any particular.   The case fell within the rule laid down in Laing *v.* Calder, 8 Pa. 482, which is as follows: " The mere happening of an injurious accident to a passenger while in the hands of a carrier will raise a presumption, prima facie, of negligence, and cast the onus of showing that it did not exist on the carrier."   This presumption, it will be noticed, arises, not out of the character of the carrier, but out of the nature of the accident.   The injurious accident must be connected with the appliances for transportation which are provided by the carrier, are under its exclusive care and control, and whose condition it is bound to know.   If, therefore, the accident complained of happens before the plaintiff has committed himself into the hands of the carrier, the rule does not apply, but the negligence alleged must be proved as in ordinary cases : Hayman v. Penn. R. R., 118 Pa. 509.   Nor will the fact that the plaintiff has put himself into the hands of the carrier be sufficient to raise the legal presumption of negligence, unless the accident from which he suffers is connected with the appliances of transportation.

R. R. v. McKinny, 124 Pa. 462.   In the case just cited, Mc-Kinny was a passenger on board one of defendant's trains, which was moving at a high rate of speed.   A piece of coal came through the open window of the car near which he sat, and struck him in the face.   There was no failure of, or accident to, any of the appliances of transportation, but an injury to an individual passenger from an independent and unrelated cause ; and we held that the rule of Laing v. Calder did not apply. The same principle controls this case.   The accident by which plaintiff's baggage was lost was not due to the failure of any of the appliances of transportation, but to an independent cause, the flood, which involved the car and the baggage it contained in a common ruin.   The flood was, as to the defendant, an inevitable accident, properly described as actus dei.   In such a case negligence is not presumed, but must be proved, as any other fact necessary to the plaintiff's recovery.

In this case, when the contract to carry was shown, it became the duty of the carrier to excuse its non-performance.   The loss of the trunks by the flood from the South Fork dam was admitted.   This accounted for their non-delivery, and it was only necessary to show the character of the flood, and that the loss of the train was not due to want of care on its part in the management of its business, in order to make a complete defence.   Let us see what the defendant's evidence does show. It shows, first, that the damage apprehended by the servants and employees of the defendant were those naturally resulting from the continued and heavy rainfall.   It shows, next, constant telegraphic communication between those charged with directing the movement of trains and local agents and trainmen along the line, and the exercise of great care in the management and movement of trains in the valley of the Conemaugh, in order to avoid the damages known to exist or likely to be encountered.   In the third place, it shows the care exercised over this particular train, and that it was moved into the yard at Conemaugh because that was a place of absolute safety from any flood that there was reason to anticipate, and was a convenient place at which to reach it with orders.   Finally, it shows that while the train was thus carefully disposed of and safe from any known danger, it was suddenly overwhelmed by the deluge from the broken dam, and destroyed so utterly that no

vestige of the car or the baggage has since been found. This made a defence that meets the requirements of the rule as to the burden of proof resting on a carrier in every particular. It shows the loss by inevitable accident of the trunks sued for; and it shows that the loss was not made possible by the negligence of the defendant, but happened in spite of the utmost care exercised by agents and employees to escape the dangers it knew to exist or had reasonable ground to apprehend.

It may be possible for us, looking back coolly and in the clear light of history on that terrible catastrophe, to see how property and life might have been saved if men on the ground had realized the awful magnitude of the impending calamity. It was not realized. The inhabitants of the populous valley sat in their homes or went about their business while the deluge was approaching. So swift was its approach, that the horseman, running to warn the city, was overtaken and swallowed up ; and the flood fell unannounced, and swept the Day Express and the city of Johnstown before it. What was done on that day must be considered in the light of what was then known, and what, from such knowledge, it was reasonable to apprehend. So considered, the defence was complete. There was no question of fact for a jury to decide, and it was exactly right for the learned judge to tell them so and to direct their verdict: Moore v. R. R., 108 Pa. 349 ; Cadow v. D. L. & W. R. R., 120 Pa. 559 ; Penn. R. R. v. Bell, 122 Pa. 58.

The assignments of error are not sustained, and the judgment is affirmed.