NICHOLAS COLSCH, SR., Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Railroads:** SHIPMENT OF LIVE STOCK: DEGREE OF CARE REQUIRED: INSTRUCTION. Where live stock is accompanied in transit by the shipper the carrier can not be held to an exercise of the highest degree of care to avoid injury to the stock from freezing, as in this case; he is only bound to exercise ordinary and reasonable care, which is such care as an ordinarily careful person would exercise under like circumstances.

**Same:** BURDEN OF PROOF. The same degree of care is required by the carrier of live stock whether the shipper accompanies the same or not; but where he does accompany the shipment the burden is upon him to show that any injury which may have occurred to the stock was not the result of his failure or negligence in loading or caring for the same.

**Same:** EVIDENCE. In an action against a railroad company for injury to live stock while in transit, on account of freezing, it is competent for the company to show statements of the shipper who accompanied the stock, to the effect that the loss occurred from overloading the car, without at the same time mentioning the freezing of the stock; and it is competent for the company to show the fact of overloading.

**Same.** The testimony of competent live stock shippers who saw the car of stock in question was admissible on the question of whether stock would freeze in such a car at a temperature shown to have existed during the transportation.

Evans and Weaver, JJ., dissenting.

*Appeal from Allamakee District Court.*—HON. L. E. FELLOWS, *Judge.*

Friday, July 9, 1910.

Action at law to recover damages sustained by plaintiff in the shipment of a carload of cattle over defendant's line of railway. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*M. B. Hendrick, H. H. Stilwell, J. C. Cook,* and *H. Loomis,* for appellant.

*Wm. S. Hart,* for appellee.

Deemer, C. J.—The petition alleges, in substance: That in March, 1900, plaintiff delivered to defendant, a common carrier, at St. Paul, Minn., a carload of cattle in good condition, to be transported to Lansing, this state; that defendant failed in its duty as a common carrier, and in its contract obligations to plaintiff, in that from the time of the undertaking to transport said cattle it failed to exercise the diligence required by law to protect the same from injury by exposure and freezing, and so that, when Lansing was reached, several of the cattle were found frozen to death, and the others were more or less injured from the exposure and freezing; that at all times defendant had notice and knowledge respecting the condition of the cattle, and the injuries being inflicted thereto, notwithstanding which it took no steps to relieve the same from the danger to which they were exposed. It is specifically alleged that after receipt of the cattle at St. Paul, the defendant transported the car to Newport, a station a few miles distant, where the car was left "standing on a side track, in an unsheltered and exposed position, for a period of several hours, and until said cattle became badly frozen;" that this was against the protest of plaintiff, and against his demand "that said stock be removed from where they were so left, within a reasonable time, and

forwarded to their destination, or unloaded and placed in proper shelter." Defendant denied the negligence specifically charged; denied that the conditions were such as to make it necessary to unload the cattle or treat them otherwise than it did; alleged that the car was forwarded by the first regular train leaving Newport, and carried forward without unnecessary delay. It also denied that the cattle were frozen or injuriously affected by the weather while they stood upon the side track or at any other time while in defendant's possession, "and denied that plaintiff has been damaged by any fault or negligence or breach of duty on its part."

In order to make out his case under these issues plaintiff introduced testimony to show that the cattle were in good condition when loaded in the car; that the loading was completed by seven o'clock in the evening, when the car was taken by a switch engine to Newport, where it was placed upon a side track and allowed to remain for about four hours before being started on its journey south. As a witness, plaintiff further says that he accompanied the car from the start; that the night was clear and cold, and that it grew colder as it advanced, that the country west and north of Newport is open and flat and of lower elevation than the station, and that a hard wind was blowing from the northwest; that the cattle were severely chilled during the long wait on the side track, and that he tried in vain to find assistance in giving them protection, but there was no one at the station save the telegraph operator, to whom he appealed, who failed to take any steps to alleviate the condition of distress. He further testified—and without dispute—that live stock loaded in a car suffer more severely from wind and cold when the car is at a standstill than when moving. Also, that as the train in question proceeded south, moderated temperature was experienced. There was, also, evidence respect-

ing the condition of the cattle when delivered at the place of destination.

Defendant offered in evidence a written contract, under which the shipment was made and in such contract these provisions, among others, appear: That the company shall not be liable for injury arising from delay in transportation; and that the owner in charge of stock shall bear all expense of feeding and watering during transportation. Evidence was also introduced respecting the weather conditions at the time, as to the conduct of the train from Newport south, and as to the condition of the cattle when delivered. The testimony for defendant tended to show that the damages to plaintiff's stock could not have been due to weather conditions, or to the conduct of the train from Newport southward on defendant's line.

The trial court, in view of this testimony and the issues tendered by the pleadings, gave the following, among other, instructions:

If there was delay in the transportation of the cattle, the defendant was required to use the highest degree of care during the delay for their safety. If the removal of the cattle from the car during the time of the delay, or at any time while in the defendant's possession, was necessary for their protection from injury, and it was possible to remove them, defendant was bound to do so, and was bound to give them whatever personal attention was necessary for their protection, during the whole time the cattle were in possession of defendant. When the defendant contracted to carry the cattle to their destination, the law imposed upon it an obligation to carry them in a proper manner, and deliver them in good condition, considering the ordinary perils of the road; and if it failed to deliver them in such condition, it is responsible in damages for such failure, unless it can excuse itself by showing that the damage was caused by some condition beyond its power to know of and to prevent.

These instructions are challenged by defendant for

the reason that they imposed upon defendant the highest
degree of care known to the law, whereas, under the facts
disclosed by the record, nothing more than ordinary care
was required. It must be borne in mind that there was
no negligent delay in the shipment of the cattle. · They
were taken on defendant's first regular train leaving New-
port after their arrival at that point, and it is not claimed
that defendant's train schedules were inadequate, or that
the animals should have gone forward from Newport at
an earlier hour than they did. It is defendant's treat-
ment of the cattle while at Newport, awaiting the arrival
of a south-bound train, which is relied upon as a ground
for recovery. Plaintiff says that defendant was negligent
in its care of the cattle at this point, while defendant denies
it. The trial court instructed that defendant's duty was
to exercise the highest degree of care in the safety of
the cattle, and that it could not excuse itself, except by
showing that the damage was caused by some conditions
which were beyond its power to know of and prevent. As
already observed, this is not a case where the carrier is
charged with delay in the shipment of the stock; nor is
plaintiff relying upon the presumptions arising where one
shows the delivery of property in good condition to a carrier
and a redelivery by the carrier to the shipper of the goods
in a damaged condition. Here plaintiff pleaded and at-
tempted to prove defendant's negligent treatment of the
cattle while at Newport, and the degree of care which the
law imposed upon it in caring for the stock during the
delay was an incident of the shipment. In this connec-
tion it must be remembered that plaintiff accompanied his
stock, was with them at Newport, and, as he says, notified
defendant's employees of the dangers incident to the change
in climatic conditions.

As we understand it, the degree of care required of
a carrier under such circumstances is not the highest, but
ordinary and reasonable care, such care as an ordinarily

careful person would exercise under the same or similar circumstances. See,. as supporting this rule, *German v. R. R. Co.;* 38 Iowa, 127; *Beard v. R. R. Co., 79* Iowa, 518; *Peterson v. Ry. Co.,* 19 S. D. 122 (102 N. W. 595); *McGraw v. R. R. Co.,* 18 W. Va. 361 (41 Am. Rep. 696); *Truax v. Philadelphia R. R. Co.,* 3 Houst. (Del.) 233; *Peck v. Weeks,* 34 Conn. 145; *Chapin v. R. R. Co.,* 79 Iowa, 582. It is generally held that where goods ,of a perishable nature are injured or practically destroyed by a sudden and unexpected freeze, or from other cause of a like nature, the carrier is not liable in the absence of a showing of negligence on its part. If the transportation is being carried on at a season of the year and in a locality where a freezing spell is, in the nature of things, probable, the carrier will be held liable for loss or injury to perishable goods caused by their being frozen only when common prudence would have required it to anticipate such weather conditions as were probable, and to provide against them by sheltering the goods. Ordinary care and prudence upon its part is all that is required. 'See, as supporting this view, *Vail v. Pacific R. R. Co.,* 63 Mo. 230; *Swetland v. Boston R. R. Co.,* 102 Mass. 276; *American Express Co. v. Smith,* 33 Ohio St. 511 (31 Am. Rep. 561); *Nashville R. R. Co. v. David,* 6 Heisk. (Tenn.) 261 (19 Am. Rep. 594). See also: *Chicago R. R. v. Woodward,* 164 Ind. 360 (72 N. E. 558, 73 N. E. 810); *Black v. C., B. & Q. R. R.,* 30 Neb. 197 (46 N. W. 428); *Ill. Cent. R. R. v. Holt* (Ky.) 92 S. W. 540; *Maslin v. B. & O. R. R.,* 14 W. Va. 180 (35 Am. Rep. 748); *Nashville R. R. v. Jackson,* 6 Heisk. (Tenn.) 271; *Parsons v. Hardy,* 14 Wend. (N. Y.) 215 (28 Am. Dec. 521); *Vencill v. R. R.,* 132 Mo. App. 722 (112 S. W. 1030).

One of the leading cases on this subject is *St. Louis Co. v. Brosius,* 47 Tex. Civ. App. 647 (105 S. W. 1131), from which we quote the following:

*I. RAILROADS:* shipment of live stock: degree of care required: instruction.

If a burden rested upon appellant to account for the origin of the disease and to show absence of negligence on its part, then the court properly submitted the issues, and it was the province of the jury to determine whether or not this had been done. In this state a carrier assumes the same degree of liability in the carriage of live stock as it does in any other class of freight, subject to such exceptions, on account of the inherent nature of the property, as justice and common fairness would impose. *Mo. Pac. Ry. v. Harris,* 67 Tex. 166 (2 S. W. 575). We know of no established rule by which to determine with exactness in every case what injuries furnish, from their mere presence, *prima facie* evidence of negligence, and those that do not. But we feel sure that the mere fact that an animal, apparently sound when delivered for shipment, arrives at its destination sick with a disorder, such as pneumonia, should not raise the presumption that the carrier had been guilty of negligence which caused it. *Weed v. I. & G. N. Ry.,* 21 Tex. Civ. App. 689 (53 S. W. 356); *L. & N. Ry. Co. v. Wathen* (Ky.), 49 S. W. 185; *Id.,* 66 S. W. 714; *Hussey v. Saragossa,* 3 Woods C. C. (U. S.) 380 (Fed. Cas. No. 6,949); *New York, L. E. & W. R. R. Co. v. Estill,* 147 U. S. 617 (13 Sup. Ct. 444, 37 L. Ed. 292); *Long v. Pa. Ry. Co.,* 147 Pa. 343 (23 Atl. 459, 14 L. R. A. 741, 30 Am. St. Rep. 732); *Schaeffer v. Railway Co.,* 168 Pa. 209 (31 Atl. 1088, 47 Am. St. Rep. 884); *Railway Co. v. Raiordon,* 119 Pa. 577 (13 Atl. 324, 4 Am. St. Rep. 670.

Some expressions which seem to run counter to these views are to be found in *Kinnick v. Railroad Co.,* 69 Iowa, 665. They were not necessary, however, to the decision and in so far as they are opposed to the rule here announced they must be disapproved. There is nothing in *Swiney v. American Exp. Co.,* 144 Iowa, 342, which runs counter to this view. In that case the doctrine of ordinary and reasonable care and prudence in the handling of live stock and perishable property is expressly recognized and applied; but, as the owner did not accompany the animal which was being shipped, the burden was held to be upon

the defendant to show that the injury to the hog did not occur through its negligence. In reviewing the cases bearing upon the degree of care which a carrier owes when the subject of shipment is live stock or other perishable goods, confusion has sometimes resulted through a failure to consider the fact that the owner was not in personal charge of the goods. The degree of care on the part of the carrier is the same in either case, but where the shipper accompanies the property the burden is upon him, as we shall presently see, of showing that the damage did not result through any fault of his own in loading or caring for the stock. And, as a general rule, he must also show such a state of facts as makes out a *prima facie* case of negligence on the part of the defendant.

II. The instruction quoted, as well as others, placed the burden upon defendant of showing that the damages done to the cattle were not the result of its (defendant's) negligence. Plaintiff in this case accompanied the stock, and he assumed the burden of proving defendant's negligence not only in his pleading, but in the introduction of his testimony. The rule in this state and the rule which generally obtains in such cases is as follows: "But where the shipper accompanies the live stock on the transit, the burden is not on the carrier to prove that loss or injury was occasioned by the inherent or natural propensities of the animals themselves, since in that case the carrier has not the sole custody of the animals. In such a case no presumption of negligence arises merely from the loss or injury. Where the shipper is in charge of his own live stock in transit, he is presumed to know the cause of the loss or injury." *St. Louis, etc., R. Co. v. Wells,* 81 Ark. 469 (99 S. W. 534); *Adams Express Co. v. Bratton,* 106 Ill. App. 563.

In *Cincinnati, etc., R. Co. v. Greening,* 30 Ky. Law Rep. 1180 (100 S. W. 825), the court said:

The evidence is uncontradicted that, when the stock were delivered to the carriers at Moreland, Ky., they were in first-class condition; when they were received by the shipper at Atlanta, Ga., they were bruised, cut, starved, and otherwise greatly injured. Neither appellee nor any person representing him accompanied the stock. They were in the exclusive care and custody of the carrier from the time they were received until their delivery, and, under circumstances like these, the carrier will not be exonerated from liability merely by introducing its employees to show that it was not guilty of any negligence in the transportation. It is true that carriers of live stock are not insurers, as are carriers of goods and other inanimate freight, but, as said in *Louisville, C. & St. L. R. Co. v. Hedger,* 9 Bush (Ky.) 645 (15 Am. Rep. 740): 'The company, when it undertakes the exercise of this public employment, should be held to a greater degree of diligence than that required of a mere bailee. The liability of the carrier, it is true, is greatly lessened by relaxing the rule applicable to carrying ordinary goods and wares. Still, this modification of the principle does not relieve him from that high degree of diligence that the nature of the employment requires. In affording means of transportation, the company should be held to that degree of care and diligence that a prudent and careful person would exercise in such matters, and if the live stock should be lost or injured while in the custody and care of the company, or its agents, for transportation, this should be *prima facie* evidence of negligence, and the burden of proof is on the carrier to rebut this presumption.' Where, however, the shipper accompanies the stock, then a different rule as to the burden of proof obtains. Thus, in the case *supra,* it is said: 'Where the owner contracts, however, to load and unload his stock and to take charge of them during transportation, as in this case, and does in fact do so, the burden of proof, where the company is charged with negligence for the loss or injury to the stock, is upon the owner, as the party who has the care of the stock is presumed to know how the injury occurred, and must himself suffer the loss, unless negligence is shown on the part of the carrier or employees.' To the same effect is *Louisville & N. R. R. Co. v. Wathen,* 22 Ky. Law Rep. 82 (49 S. W. 185); *Louisville & N. R. R. Co. v.*

*Harned,* 23 Ky. Law Rep. 1651 (66 S. W. 25). In Hutchinson on Carriers, section 1357, the rule is thus stated: 'If live stock which is being transported is under the carrier's exclusive control, its delivery at destination in an injured condition will be *prima facie* evidence that the injury arose from some cause for which he was responsible, and he will be liable to the extent to which the shipper is damaged, unless he can show that the injury resulted from a cause for which he will be excused by the law, or by the terms of his contract. But where, as is frequently the case, the shipper accompanies his live stock for the purpose of caring for it during the transportation, the same rule as to the burden of proof is held not to apply. The stock is not in the carrier's exclusive control or custody, nor are his means of information superior to those of the shipper, who is in a position to know as well as the carrier of the causes which produce the injury. In order, therefore, that the shipper who accompanies his live stock may recover for injuries received by him during the transportation, he must not only show that he himself was free from negligence, but that the injuries were caused by a breach of duty on the part of the carrier.' Therefore, the stock having been received by the carriers in good condition, and being in their exclusive custody, and not accompanied by the owner, the burden of proof was upon them to show how the injuries received by the stock occurred, and that they were not attributable to their negligence.

Our own cases support this view. See *Faust v. R. R. Co.,* 104 Iowa, 241; *Grieve v. R. R.,* 104 Iowa, 664; *Burgher v. Ry. Co.,* 105 Iowa, 335; *McMamus v. Ry. Co.,* 138 Iowa, 151. See, also, *Railroad Co. v. Sherwood,* 132 Ind. 129 (31 N. E. 781, 17 L. R. A. 339, 32 Am. St. Rep. 239).

In 4 Elliott on Railways, section 1549, Judge Elliott says:

The fact that the owner, or his agent, is furnished transportation by the carrier and goes with his cattle or horses to look after and care for them, especially if he has agreed to do so in the contract of carriage, often exerts

an important influence in determining the duties and liabilities of the carrier in the particular case. As we shall hereafter show it may relieve the carrier from the duty to feed and water and otherwise give particular attention to the stock; but it will not relieve the carrier from the duty to afford the owner reasonable opportunities for so doing. The fact that the owner accompanies the stock and takes charge of it may also be important upon the question of contributory negligence. . . . So, where the owner accompanies the stock, under a special contract to care for them himself, he may well be presumed to be as well acquainted with the facts in regard to their loss or injury as the carrier, and as they may have been injured because of his own negligence, or because of their inherent nature and propensities, and not by the negligence of the carrier, it is but just to require him to show the facts. The rule in such cases, therefore, is that the burden of proof, is upon the plaintiff to show that a breach of duty upon the part of the carrier caused the injury or loss, and if the carrier is liable only for negligence, the burden is upon the plaintiff to show such negligence. It has also been held that a railroad company is not liable as an insurer where the car in which animals are shipped is in the possession and control of their owner under a contract that he should take care of them, and that if they are injured by the act of the owner the carrier is not liable no matter whether such act was negligent or not. The court further held, in the case just referred to, that even if the special contract was prohibited by statute, and therefore invalid, there could be no recovery.

III. Defendant offered to show what plaintiff said to the conductor of the train who took the car of cattle from River Junction to Dubuque; to the effect that the reason why the cattle were down in the car and were in a damaged condition was that the commission men who loaded them at South St. Paul put too many in the car; and that he said nothing about the cattle being frozen. There was no testimony that any one of defendant's agents had inspected the car when loaded, but defendant did issue a bill of lading or live stock contract

3. SAME: evidence.

which recited that the car of cattle weighed twenty-two thousand pounds and was received in apparent good order for shipment to Lansing, Iowa. There is no testimony that defendant weighed the cattle; but the evidence showed that no matter what the weight, the shipper had to pay for the car on the basis of twenty-two thousand pounds. Under the rules heretofore announced we think these admissions of the plaintiff should have been received in evidence. Nothing in *Kinnick v. R. R. Co.,* 69 Iowa, 665, runs counter to this view. At most it was a question for the jury to determine under all the testimony as to whether or not defendant knew or should have known the manner in which the stock was loaded and assumed the risks incident thereto. There were sixty-two head of these cattle loaded into the car, and defendant claims that this was too great a number, and that this was the cause of the trouble. We think the testimony of the conductor should have been received.

Another witness who was a stock shipper and who saw the car of stock was asked as to whether or not it was overloaded, but he was not permitted to answer. We think his testimony should have been received. See *Grieve v. R. R. Co., supra; Hart v. Ry. Co.,* 69 Iowa, 485. In the latter case it is said:

The carrier is held to be an insurer of the safety of the property while he has it in possession as a carrier. His undertaking for the care and safety of the property arises, by the implication of law, out of the contract for its carriage. The rule which holds him to be an insurer of the property is founded upon considerations of public policy. The reason of the rule is that, as the carrier ordinarily has the absolute possession and control of the property while it is in course of shipment, he has the most tempting opportunities for embezzlement or for fraudulent collusion with others. Therefore, if it is lost or destroyed while in his custody, the policy of the law imposes the loss upon him. *Coggs v. Bernard,* 2 Ld. Raym. 909;

*Forward v. Pittard,* 1 Durn. & E. 27; *Riley v. Horne,* 5 Bing. 217; *Thomas v. Railway Co.,* 10 Metc. (Mass.) 472 (43 Am. Dec. 444); *Roberts v. Turner,* 12 Johns. (N. Y.) 232 (7 Am. Dec. 311); *Moses v. Railway Co.,* 24 N. H. 71 (55 Am. Dec. 222); *Rixford v. Smith,* 52 N. H. 355 (13 Am. Rep. 42). His undertaking for the safety of the property, however, is not absolute. He has never been held to be an insurer against injuries occasioned by the act of God, or the public enemy, and there is no reason why he should be; and it is equally clear, we think, that there is no consideration of policy which demands that he should be held to account to the owner for an injury which is occasioned by the owner's own act; and whether the act of the owner by which the injury was caused amounted to negligence is immaterial also. If the immediate cause of the loss was the act of the owner, as between the parties, absolute justice demands that the loss should fall upon him, rather than upon the one who has been guilty of no wrong; and it can make no difference that the act can not be said to be either wrongful or negligent.

Competent stock shippers who saw the car of stock at New Albin were asked whether or not cattle would freeze in a car similar to the one in which plaintiff's stock were shipped with a temperature such as was shown by the testimony to have existed at Newport and at other points on defendant's line of road. They were not permitted to answer. We think these rulings were erroneous and that the testimony should have been received. *Betts v. Ry. Co.,* 92 Iowa, 343; *Hutchinson v. R. R. Co.,* 37 Minn. 524 (35 N. W. 433).

4. SAME.

For the errors pointed out the judgment must be, and it is, *reversed.*

EVANS, J. (dissenting).—I am not able to concur in the majority opinion. The only criticism upon it which I care to note is that neither its main discussion nor its conclusion is warranted by the state of the pleadings in this case. The action was brought by plaintiff to recover damages for loss of stock shipped . over its railway from

St. Paul to Lansing Iowa. Twelve of the cattle died in the course of transportation.

The allegations of the petition are that the plaintiff delivered to the defendant for shipment from St. Paul to Lansing, Iowa, sixty-two head of cattle, and that the defendant received the same from plaintiff for such transportation "and assumed to the plaintiff the obligation and duties of a common carrier of said cattle;" "that said cattle were delivered to defendant properly loaded and in good condition;" "that the defendant caused the cattle to be transported a short distance and then left the car upon a side track in an unsheltered and exposed position for several hours, until the cattle became badly frozen; that the exposure of the cattle to the severe cold was a violation of its contract and was negligent and unauthorized conduct on its part, and was done against the protest and demands of the plaintiff that the stock be forwarded to its destination or unloaded and placed in proper shelter; that by reason of the negligence and wrongful conduct of the defendant and its failure to comply with its contract and its obligation as a common carrier, the said stock so intrusted to defendant was damaged by the death of twelve head of said cattle on account of said freezing and exposure to cold." Later plaintiff filed an amendment which alleges that the defendant "failed to exercise the diligence required by law to protect plaintiff's property from injury and destruction by freezing, exposure, and all other causes by which plaintiff's stock was injured resulting from conditions which, in the exercise of the care required of a common carrier, might have been averted, and which, in the exercise of due care, might have been known and anticipated, and which neglect and delay in transporting occasioned the injury of plaintiff's property of every character and by whatever cause; that the agents and servants of defendant during the entire time the plaintiff's property was in its possession and in its control had actual knowledge and notice from the plaintiff

as to its condition and as to the injuries being inflicted upon it, and to which it was liable, and were repeatedly demanded to take steps to protect said property and relieve it from the danger of injuries which resulted in the plaintiff's loss and damage by failing and neglecting so to do."

The answer of the defendant contains certain specific and qualified denials. It denies that it transported the cattle a short distance and then left the car upon the side track. It alleges that the cattle were forwarded by the first regular train leaving Newport and carried forward without unnecessary delay. "It denies that the conditions at the time were such as to render it necessary to unload said cattle or to treat them otherwise than they were treated at the time, and denies that said cattle were frozen or injuriously affected by the weather to any extent during the time they stayed upon said side track, or at any other time while they were within its possession; and denies that plaintiff has been damaged by any fault or negligence, or breach of duty on its part in the sum claimed or in any other or different sum whatever." The foregoing comprises the entire answer. It contains no general denial nor affirmative defense. All material allegations of the petition which are not thus denied may be deemed as conceded. It will be noted that the answer bases no claims of exception or exemption from its ordinary common-law liability as a carrier upon the fact that the plaintiff accompanied the shipment. There is no reference to such fact either in the petition or in the answer. The first issue made by the answer is the denial that the defendant was responsible for side-tracking the car at Newport. Defendant abandoned this issue in effect on the trial, and we need not further consider it. The other issues made by the answer are: (1) It denies that the conditions were such as to render it necessary to unload the cattle or to treat them otherwise than as they were treated. (2) It denies that said cattle were frozen or injuriously affected to any extent by the

weather at any time while they were in defendant's posses-
sion.    (3)· It denies that plaintiff has been damaged by
any fault or breach of duty on its part.

Plaintiff introduced evidence in chief that the cattle
were in good condition when loaded in the ·car; that the
loading was completed by seven o'clock in the evening, when
the car was taken by a switch engine to Newport and placed
upon a side track there and allowed to remain there for
four hours before being started on its journey south; that
he accompanied the car; that the night was clear and cold
and grew colder as it advanced.   That the country west and
north of Newport is open and flat and that a hard wind
was blowing from the northwest; that the cattle were
severely chilled during the long wait on the side track; that
he tried in vain to get assistance in giving them protection;
that he applied to the telegraph operator who was the only
person at the station, and who failed to take any steps to
alleviate the condition; that live stock loaded in a car suffer
more severely from wind and cold when the car is at a
standstill than when the car is moving; that as the train
proceeded south, moderated temperature was experienced.
There was also evidence descriptive of the condition of the
cattle when delivered at the place of destination.   Several
were dead in the car and others died immediately after
being unloaded, making twelve in all.   Others were in bad
condition and were barely saved from death.

The defendant offered in evidence a written contract
under which the shipment was made and in such contract
this provision, among others, appears: "That the company
shall not be liable for injury arising from delay in trans-
portation; that the owner in charge of stock shall bear all
expense of feeding and watering during transportation."
Evidence was also introduced by defendant respecting the
weather conditions at the time, and the conduct of the
train from Newport south, and the condition of the cattle
when delivered at Lansing.

It will be observed that, in so far as it was incumbent upon the plaintiff as a ·matter of law to prove that the alleged injury to his cattle was not caused by any fault of his, it is sufficiently covered by the undenied allegations of his petition. This of itself was sufficient reason why the instructions of the trial court need not define the extent to which the burden of proof lay upon the plaintiff, as to care on his part. Regardless, therefore, of the abstract rule in such cases, it is clear that under the pleadings and the undisputed evidence in this case, the burden of proof on the disputed questions was properly laid upon the defendant. It may be conceded that it is not an accurate statement of the law in the abstract to charge the defendant with the "highest degree of care possible to the situation," although this was substantially the language used in the *Kinnick* case. In the state of the pleadings and under the evidence, it was clearly nonprejudicial to the defendant in this case. It was either conceded or undisputed that the plaintiff delivered to the defendant the cattle as a common carrier in *good condition,* and that at least twelve of them died while in its possession. It was therefore *prima facie* liable.

The only evidence offered by the defendant as bearing upon the cause of such loss, was evidence tending to show that the cattle could not have died as a result of severe weather, and that they might have died as a result of overloading the car. In no other sense did it attempt to explain the cause of the loss. There was no evidence tending to show that it resulted from the natural propensities of the animals, or from some internal condition already existing. On the contrary, the allegation that the cattle were in good condition was undenied. The distinct issue made by the defendant in its answer was that the conditions were not such as to render it necessary to unload the cattle or to treat them otherwise than as they were treated. The jury must necessarily have found against the defendant

on that issue as made.   The claim in the evidence that the car was overloaded did not aid the defendant upon that issue.   If any evidence had tended to show any other cause for the death of these cattle except that ascribed by the plaintiff, and if the evidence tended to show that in the presence of such other cause the defendant had exercised a reasonable degree of care under all the circumstances, a different situation would be presented.

As the case stands on the pleadings and the evidence, the plaintiff has established a case of liability on the part of the defendant as a common carrier, every element of which is supported by undisputed evidence, or by undenied allegations of his petition.

I reach the conclusion, therefore, that the judgment below ought to be *affirmed.*

Weaver, J., joins in the dissent.