WILLIAM WIERSMA, Appellee, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

No. 40901.

OCTOBER 27, 1931.

Van Oosterhout & Kolyn, James C. Davis, Jr., and Davis, McLaughlin & Hise, for appellant.

Klay & Klay, for appellee.

GRIMM, J.—It appears from the record in this case that the defendant is a common carrier operating a line of railroad from Fort Pierre, South Dakota, to Sioux City, Iowa. The plaintiff is a resident of Sheldon in O'Brien County, Iowa.

On or about October 8, 1928, plaintiff loaded two cars of range horses and colts at Fort Pierre, South Dakota, for transportation to Sioux City, Iowa. The horses were delivered by the plaintiff at Fort Pierre, South Dakota, under written contract and were accepted by the defendant in apparent good condition. Some of the animals died in transportation.

The defendant (appellant) states in argument that "there is but one specification of error presented for the consideration of the court by this appeal."

It appears that the defendant pleaded by answer that the plaintiff was guilty of overloading the horses in question and that overloading was the proximate cause of the damages of which the complaint is made.

The specific error relied upon for reversal strikes at paragraph 10 of the instructions submitted to the jury by the court, which is as follows:

"You are instructed that the undisputed evidence in this case shows that the defendant's agent, Farrell, inspected the two cars in question before sealing and receiving them, and either knew or might have known their condition with respect to whether they, or either of them, were overloaded, and the defendant in its pleadings makes no claim that it was deceived or misled as to the number of animals in each car. Upon this record, you are instructed that if you believe that said cars, or either of them, were overloaded that fact would be no defense to any of plaintiff's claims in this action."

It will be noted that the court held as a matter of law that the defendant either knew or might have known whether the cars were overloaded and that the defendant was not deceived or misled as to the number of animals in each car.

It appears from the record that these animals were purchased on the range some forty miles from Fort Pierre and they were driven to Fort Pierre for loading. They were placed in the stockyards and from there were first loaded on the evening of October 8, 1928. Later, the train in which the two cars of stock were to be transported arrived in Fort Pierre, when it was discovered that some of the horses were down. An unsuccessful attempt was made to unload them and the stock was permitted to remain in the cars overnight. The next morning, they were unloaded and again placed in the stockyards. On unloading them, it was found that three horses and one colt were dead in one car and two horses and one colt dead in another. The remaining animals remained in the stockyards on the day of October 9th and were reloaded on the evening of October 9th.

Farrell, the railroad agent, testified that when, on October 9th, he was advised the horses were loaded, he went to the cars to seal them. It was dark and the agent testified he could not see the horses clearly. He could see by the use of a flash light or lantern which he had, looking through the slats in the stock cars, that the animals were all standing up. It does not clearly appear in the record why the horses were not loaded the second time, so that the agent could see them in daylight.

There is evidence in the record from which the jury might conclude that the cars were overloaded and that the overloading was a proximate cause of the injury to the animals.

The cars were available to the plaintiff during the entire day of October 9th and might have been loaded in the day time so that the agent might have inspected them by daylight. As it was, it is apparent that all the agent could do was to merely, by the flash light or lantern in his hands, see the horses through the slats in the stock cars and ascertain that they were all standing up.

The rule is well recognized in this state that if the live stock being transported is damaged on account of any act of the shipper or his agents, the carrier is not liable for such damage and if the shipper loads the stock and in so doing overloads the cars and damage results, the carrier is not responsible therefor. Hart v. C. & N. W. Ry. Co., 69 Iowa 485, 487; Grieve v. Illinois Central Railway Company, 104 Iowa 659; Moore v. C., R. I. P. Ry. Co., 151 Iowa 353..

The plaintiff contends that if any damage resulted from overloading, the defendant carrier, through its agent, either knew or should have known that the cars were overloaded and, therefore, overloading by the shipper is not a defense to the carrier.

In Kinnick Bros. v. C., R. I. & P. Ry. Co., 69 Iowa 665, the Railway Company sought to avoid liability on account of the failure of the shipper to properly load the live stock in question. The court said:

"Plaintiffs loaded the hogs onto the car without assistance or direction from defendant's agents or employes. Defendant claimed that the car was overloaded, and that the injury was caused by such overloading. The court instructed the jury that, if defendant had knowledge of the number of hogs in the car, and of the condition of the car as to the loading when it received it, or if it might have known these facts, it could not escape liability for the damage on the ground that the car was overloaded. Exception is taken to this instruction. But we think it is correct. It is not claimed that there was any deceit or misrepresentation by plaintiff as to the condition of the car or to its loading. Defendant's agent, who made the contract for it, went to the car after the loading was done and closed and sealed it. *There was nothing to prevent him from seeing the manner in which it was loaded.* As defendant received the property under these circumstances, and undertook to transport it to its destination, it should be held to have assumed all the liabilities of a common carrier with reference to it." (Writer's italics.)

In Colsch v. C., M. & St. P. Ry. Co., 149 Iowa 176, this court said:

"At most it was a question for the jury to determine under all the testimony as to whether or not defendant knew or should have known the manner in which the stock was loaded and assumed the risks incident thereto. There were sixty-two head of these cattle loaded into the car, and defendant claims that this was too great a number, and that this was the cause of the trouble."

In the case at bar, there was a distinct conflict in the evidence as to whether the cars were in fact overloaded. As previ-

ously stated, the plaintiff did not finish loading the live stock until at or after dark on the evening of the 9th, at which time the carrier's agent was notified to come and seal the cars. At that time, the record satisfactorily shows, it was so dark that the most the agent could do was to get a glimpse of the live stock through the slats of the stock cars by the use of a flashlight or lantern which the agent had. The most that the agent could do or did do was to see that the stock was at that time standing up; or, in other words, none of the stock at that time was "down" in the car.

It would serve no good purpose to fully set out the evidence on that point. Suffice it to say we are of the opinion that on the whole record in this case the question whether the agent knew or might have known the overloaded condition of the cars was a question of fact to be submitted to the jury and not one to be determined as a question of law by the court.

It follows that the cause must be, and is,—Reversed.

FAVILLE, C. J., and EVANS, MORLING and KINDIG, JJ., concur.