R. M. Westphalen, v. The Atlantic Northern & Southern Railway Company, and The Chicago, Rock Island & Pacific Railway Company, Appellants.

**Evidence:** EXPRESSION OF OPINION. Those experienced in buying and selling cattle on their own judgment as to weight may testify from their observation of cattle at their destination concerning their weight at the place of loading for shipment, as bearing on

the question of shrinkage. And they may also testify as to what the value of the cattle would have been at their destination if they had been delivered in good condition.

**Same.** Where it is not practicable to get before the jury the details involving a comparison of objects a witness may give his opinion based on a general description indicating similarity. Thus the value of cattle may be shown by proof of what similar cattle sold for on the market.

**Carriers:** SHIPMENT OF LIVE STOCK: NEGLIGENCE: BURDEN OF PROOF: EVIDENCE. Where a shipper of cattle accompanies the same for the purpose of giving them care and attention he has the burden of showing that injury thereto while in transit was the result of negligence on the part of the carrier. In this action the evidence is held to show that defendant, a connecting carrier, failed to unload the stock after request, at the point it received the shipment, and that owing to the excessive heat was thereby responsible for their shrinkage.

**Same:** NOTICE OF NEGLECT: TO WHOM GIVEN. It is the duty of a shipper of cattle who accompanies the same to give the carrier notice that they need some attention which he is not able to give; but it is also the duty of the carrier to have in its usual place of business some agent to receive such notice and to act thereon for the carrier. And in the absence of the general agent the shipper may assume that an agent transacting business in the office of the carrier, where its usual freight and passenger business is transacted, is the proper person to whom the notice may be given, unless it appears that he had reason to believe that the notice should be given to some other representative of the company.

**Same:** FAILURE TO UNLOAD STOCK: NOTICE. Where the passenger agent of a carrier acted with its assent in the transaction of business with reference to freight, and it appeared that it was the custom to notify him or such person as was in charge of the passenger station that cars of freight were ready to be placed on the transfer track, notice to him to transfer cars to a suitable place for unloading stock was sufficient to charge the carrier with that duty, even though it may have had another agent who had charge of the freight business.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, JULY 5, 1911.

ACTION to recover damages for the deterioration and shrinkage of three carloads of cattle shipped to Chicago over the defendants' lines of railway connecting at Atlantic, due to failure of the defendant, the Chicago, Rock Island & Pacific Railway Company, to unload the animals at Atlantic on plaintiff's request in order that they should not suffer from the heat while awaiting transportation on that company's line of road. There was a verdict for the amount of $190 against the Chicago, Rock Island & Pacific Railway Company, and from judgment on that verdict said defendant appeals.—*Affirmed.*

*Carroll Wright, J. L. Parrish, J. H. Johnson,* and *J. B. Rockafellow,* for appellant.

*H. M. Boorman,* for appellee.

McCLAIN, J.—Plaintiff had a through contract of shipment with the Atlantic Northern & Southern Railroad Company under which his three carloads of cattle were to be transported from a small station on that railroad to Chicago, over that road and the Chicago, Rock Island & Pacific Railroad, the connecting point between the two lines being Atlantic. Although the shipment was made in the expectation that the Atlantic Northern would deliver the cars at Atlantic in time for them to go forward to Chicago on the Rock Island at about six o'clock in the evening, the train on the Atlantic Northern did not reach Atlantic until half past six so that although the cars were placed on the transfer track for the Rock Island before seven o'clock; there was no freight train on which they could be carried forward until about four o'clock the next morning. The court did not submit to the jury the question as to the liability of the Atlantic Northern, and the sole ground of recovery against the Rock Island was that after the plaintiff had notified or attempted to notify the agent of the

Rock Island that the cattle were suffering from heat while being detained on the transfer track and should be unloaded, the agent of the Rock Island failed to unload them, with the result that they suffered damage and reached the Chicago market in a deteriorated and shrunken condition. It appeared that in the contract of shipment there was provision for plaintiff and an assistant accompanying the stock, and that when the cars were transferred to the Rock Island plaintiff signed a written request that the cattle be confined in the cars thirty-six hours if necessary before unloading, which request was delivered with the waybill to an agent of the Rock Island; but it is not contended that this request relieved the company of its obligation to unload the stock if such unloading became reasonably necessary in order to avoid injury from the heat, and the company was advised of that fact.

I. For the purpose of showing the weight of the cattle when loaded in order to prove that there had been an unreasonable shrinkage before they were delivered at Chicago, witnesses for the plaintiff were allowed over objection to testify as experts and from observation what the average weight of the animals was at the place where they were loaded. As the cattle were not actually weighed either at the point of shipment or at Atlantic this was the only kind of evidence available to plaintiff to show a shrinkage in weight. We think it was competent. The witnesses were men of experience in purchasing and handling cattle, and had been in the habit of buying and selling on their judgment and had found by experience that they could by inspection estimate the weights of such animals with great accuracy. 3 Wigmore, Evidence, section 1977; Jones, Evidence (2d Ed.) 1382; Lawson, Expert Evidence (2d Ed.) 16.

1. EVIDENCE: expression of opinion.

Similar objection was made to expert evidence as to what the value of the cattle at Chicago would have been if

they had been delivered in good condition, but such objection was also, as we think, without merit.

The witnesses testified as to what similar cattle were sold for on the market, which was certainly competent. It would not be practicable in such a case to get before the jury all the details as to the correspondence between the animals in question and other animals which were sold on the market at the price specified. This was clearly a case for the expression by an expert of an opinion as to the general description as indicating similarity in condition. *Craig v. Wabash R. Co.,* 121 Iowa, 471; *Stewart v. Anderson,* 111 Iowa, 329; *Yahn v. Ottumwa,* 60 Iowa, 429; *Vannest v. Murphy,* 135 Iowa, 123.

*2. SAME.*

II. There was no error in the refusal to direct a verdict for defendant on the ground that plaintiff failed to show freedom from negligence contributing to the injury complained of. It is the established rule in cases where the owner or his agent accompanies live stock in their shipment for the purpose of giving it care and attention that the burden is on the plaintiff suing for damages alleged to have resulted from failure of the carrier to properly care for the animals in transportation to show that any injury or damage suffered during transportation was due to some fault on the part of the carrier. *Colsch v. Chicago, M. & St. P. R. Co.,* 149 Iowa, 176; *Winn v. American Express Co.,* 149 Iowa, 259. But this rule relates only to burden of proof. When the shipper has shown a fault on the part of the carrier and injury or damage naturally and proximately resulting therefrom, he has made out his case. It is not necessary for him to go into the field of speculation with his evidence for the purpose of negativing any possible negligence during the subsequent period of transportation to show that no subsequent negligence on his part contributed to the ultimate loss.

*3. CARRIERS: shipment of live stock: negligence: burden of proof: evidence.*

The evidence in this case tended to show that after the cars left Atlantic they were transported without further delay to their destination, and with no complaint on the part of the shipper, and that the damaged condition of the animals when they reached Chicago was such as might reasonably be attributed to defendant's want of care at Atlantic after being notified that the animals should be unloaded at that place. We think it is clear that the evidence for plaintiff fixed the responsibility upon the defendant for whatever injury the animals suffered at Atlantic if proper notice was given that their condition required unloading and that the requirement for unloading was reasonable under the circumstances.

III. The principal controversy in the court below and on this appeal is as to whether proper and sufficient notice that the condition of the animals resulting from excessive heat required that they be unloaded 4. SAME: notice of neglect: to whom given. from the cars while they were detained at Atlantic, and the sufficiency of this notice depended on the question whether the agent of the Rock Island road to whom this notice was given was the proper agent to receive such notice. With respect to this matter the evidence tended to show that the plaintiff went to the ticket office of the Rock Island Company at Atlantic where the business of the company with reference to the transportation of freight as well as the transportation of passengers was usually transacted, and he there made his request that the animals be unloaded to one Smith, the ticket agent of the company; that Smith was unable to inform him where the general agent of the company at Atlantic was to be found, and declined to make any effort to have the cars placed in a position where the animals might be unloaded into the company's yard; that the only other agent of the company present in the office was one Lorenzen, who was the telegraph operator; and that Smith in addition to his duties as ticket agent had been in the

habit of taking orders for freight cars and making a record of such orders in a book, with the result that cars were usually furnished as requested. While there is evidence that the telegraph operator also sometimes took such orders for cars, there is nothing to indicate that he was the superior of Smith in the matter of authority to control the disposition of freight cars in the yards.

Now, we think it is clear that in the absence of the general agent it was the duty of the company to have some agent in its office with authority to transact its business with reference to the handling of freight and that Smith had been in the habit of exercising such authority in the absence of the general agent. Charged as the company was with the duty of exercising care in the handling of these animals in transportation, it would not do to say that such duty was being discharged while the only agent having authority to exercise such control was absent from the usual place of business without any authorized substitute in his place to whom information could be given that live stock waiting for some nine hours for proper train was suffering for attention, which could only be given by the transfer of the cars to a suitable place for unloading. It was the duty of the shipper to give notice that the animals required attention which he could not give, but it was equally the duty of the company to have in its usual place of business some agent authorized to receive such notice, and to secure for the stock the attention required so far as such attention involved action on the part of the company. In the absence of any showing that the shipper had reason to know that his application ought to be made to some other agent or representative of the company he was certainly justified in assuming that an agent transacting business in the office of the company where the freight as well as the passenger business was usually transacted was a proper agent to whom his request might be directed.

IV. What has been said in the preceding para-

graph is applicable to an instruction in which the jurors were told that while plaintiff's request that the animals be unloaded must have been made upon some person having authority on the part of the company to act in the matter, yet if it appeared from the evidence that Smith was requested by plaintiff to have the cars of stock placed at the stockyards, and that he was the ticket agent of the company, and that he was in the habit of receiving orders from shippers for cars, which orders were recognized and filled by the company, and received the waybills of shipments of cars of freight from the Atlantic Northern to his own company, and caused the switching crew of the Rock Island Company to take cars from the transfer track for forwarding by the Rock Island Company to their destination, then he was apparently, in the absence of the general agent, the only person to whom such a request could be made, and that it was within the scope of his duty to order the cars to be placed at the stockyards so that the animals could be unloaded. There was evidence to support this instruction, and we think that it clearly stated the rules of law applicable to such evidence.

5. SAME: failure to unload stock: notice.

It did appear, as already indicated, that shippers had been in the habit of securing cars by leaving orders therefor with said Smith, and that as between the Atlantic Northern Company and the Rock Island Company it was the custom of the agent of the Atlantic Northern Company to notify Smith or whoever was in charge at the passenger depot that cars had been placed on the transfer track for the Rock Island Company. This was certainly sufficient evidence to support the instruction. The contention that Smith was merely the ticket agent is fully answered by the evidence that he customarily acted with the assent of his company in transacting business with reference to freight, and it does not show that Lorenzen was the agent of the company to exclusively transact such business. Notice to

Smith was therefore sufficient to charge his company with whatever duty rested upon it in the premises. It is wholly immaterial whether Smith had the authority to cause a switching crew to go upon the transfer track with an engine for the purpose of removing cars. If he was the agent through whom shippers were authorized to transact their business with reference to freight, then it was for the company to see to it that, when Smith as its properly authorized agent received notice that cars should be transferred, the proper agent of the company was advised and authorized to make such transfer. In general support of our conclusions on this branch of the case, see *Wood v. Chicago, M. & St. P. R. Co.*, 68 Iowa, 491; *Rohrig v. Chicago, R. I. & P. R. Co.*, 130 Iowa, 380.

The judgment of the trial court is *affirmed.*