NICHOLAS COLSCH, SR., Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

CARRIERS: Live Stock Shipment—Non-negligence in Speed of Train
1   —Negligence en route—Instructions. Even though a train carrying stock is operated on schedule time and at proper speed, yet the carrier will be responsible in damages for failure to afford reasonable protection to the stock during a long but necessary delay at a siding. So held where stock was frozen during a long delay, in an exposed condition at a siding. Separate instructions elaborating these two propositions are held to be perfectly harmonious.

CARRIERS: Live Stock—Natural Vices—Perils of Road—Negligence
2   of Shipper. A carrier is not liable for damages to a shipment of cattle caused by (a) the ordinary perils of the road, (b) the natural propensities or inherent vices of the animals, and (c) the negligence of the shipper. Instructions held to properly present the doctrine.

CARRIERS: Live Stock—Damages from Freezing—Sufficiency of
3   Evidence. A finding that the injury to cattle during shipment was caused by freezing will not be disturbed when the evidence thereon was in conflict, the record farther showing the state of the thermometer during one evening of the shipment and that the weather "was growing colder."

CARRIERS: Live Stock—Damages from Freezing—Notice to Car-
4   rier—Instructions. Where, during the shipment of cattle, the shipper told the conductor of the condition of the cattle and of

the danger from freezing, it was proper to instruct the jury that such information was sufficient notice to the carrier. Such instruction is not, in fairness, a misleading statement as to the duty or obligation of the carrier.

**EVIDENCE:  Expert Testimony—Overloading Stock Cars.** Witnesses familiar with the cars carrying the stock shipment in question may give their opinion as to the number of cattle which may be loaded into a car without overloading the same.

**WITNESSES:  Evidence — Cross-Examination — Overloading Stock Cars.**  An expert witness having testified to the number and weight of cattle which could be loaded into a certain car without overcrowding, *held*, he should have been permitted on cross-examination, in view of the record, to testify as to the number of calves of certain weight which he would include in his estimate. *Held*, the exclusion of the answer was nonprejudicial because fully covered by other witnesses.

**CARRIERS:  Live Stock—Duty to Protect—Lack of Facilities.** Lack of equipment with which to care for shipments of live stock is a poor excuse for the carrier's failure to meet its obligation. So held where, on account of the lightness of business, the carrier had no engine at a siding, with consequence that a shipment of stock was long exposed to inclement weather and was severely frozen.

**TRIAL:  Instruction—Assumption of Truth of Undisputed Fact.** A fact, testified to by an interested witness, and not denied, and with no attendant circumstance casting doubt upon the matter of veracity, may be treated in the instructions as true.

PRINCIPLE APPLIED:  Plaintiff complained that his shipment of live stock was sidetracked for many hours in inclement weather and severely frozen, because of the failure of the carrier to so place the car that the cattle could be unloaded. He testified that on two occasions he informed the carrier's agent of the condition of the stock and the necessity for protection. This statement was not questioned by any witness or by any circumstance. *Held*, the court could well assume it was true.

**CARRIERS:  Live Stock—Shipper as Caretaker—Effect on Carrier's Possession.**  The fact that the shipper accompanies his shipment of stock as a caretaker does not render inaccurate an instruction that the stock was ''in the possession and under the control of the carrier.''

**CARRIERS:** **Live Stock—Shipper's Knowledge of Weather—Unnecessary Exposure to Weather by Carrier.** Irrespective of the knowledge of the shipper as to the condition of the weather when delivering live stock to the carrier, the carrier must, after receiving the same, exercise reasonable care to protect it from unnecessary exposure to the weather. So held where the carrier sidetracked the car and unnecessarily exposed the stock for some hours to inclement weather.

*Appeal from Allamakee District Court.*—HON. A. N. HOBSON, Judge.

WEDNESDAY, JUNE 30, 1915.

ACTION to recover damages to cattle, consequent on defendant's alleged negligence, resulted in a judgment against defendant, from which it appeals.—*Affirmed.*

*W. S. Hart,* for appellee.

*Cook, Hughes & Sutherland,* and *H. H. Stillwell,* for appellant.

LADD, J.—I. The issues are stated in the opinion filed on the former appeal, 149 Iowa 176. The cause was again tried in September, 1911, and a verdict returned for $500.00 as damages and $331.25 interest.

The first complaint is that portions of instructions 10 and 13 are contradictory. In the latter, the jury was told that there was no evidence that the defendant agreed to transport the carload of cattle from South St. Paul to Lansing on a faster train or schedule of time than it did, or that it was not transported at proper speed or on proper time. The former instruction reads:

1. CARRIERS: live stock shipment: non-negligence in speed of train: negligence en route: instructions.

"If you find from the evidence that there was delay in the transportation of the cattle, or that plaintiff complained to the conductor in charge of the train of the condition of the cattle, the defendant was in either event required to exercise ordinary and reasonable care during their delay and

also while in transit for their safety and protection. If the removal of the cattle from the car during the delay or at any time while in the defendant's possession was necessary for their protection from injury, and in the exercise of such ordinary and reasonable care on defendant's part it was possible to remove them, defendant was bound to do so, and was bound to give them whatever attention was necessary for their protection during the whole time the cattle were in possession of defendant. When the defendant contracted to carry the cattle to their destination, the law imposed upon it an obligation to carry them in a proper manner and deliver them in good condition considering the ordinary perils of the road, and the natural propensities of the animals themselves, and if it failed to deliver them in such condition, it is responsible in damages (if any) unless it appears from the evidence that such damages were caused by the acts of plaintiff, his servants or agents, and the burden of proof rests upon plaintiff to establish by a preponderance of the evidence before you that defendant was negligent in these respects, and that neither his own acts or those of his servants and agents caused the injuries complained of.''

One instruction merely advised the jury that there was no agreement with reference to a faster train or a faster schedule than that at which the cattle were carried, and that the car was hauled at a proper speed and no more time consumed than defendant might take; but for all this, there might have been and were in fact delays on the way, especially at Newport and River Junction, and the duty devolved on defendant to exercise the care defined in the instruction at these points. The delay referred to in the 10th instruction was that incident to the hauling of the cattle, as when switching or in making up the train and the like, while instruction 13 relates to the speed of the train and whether it moved on proper time. In other words, the subjects are distinct and there is no conflict whatever.

II. Exception is taken to the last half of the 10th in-

struction for that, as is contended, "it failed to point out to the jury that the defendant would not be liable for damages

2. CARRIERS : live stock: natural vices : perils of road : negligence of shipper.

due to the acts of the animals themselves, such as fighting, boring and unruliness of the animals." The carrier is not liable for damages occasioned by the natural propensities or inherent vices of animals being transported, and this instruction plainly recognizes such to be the law. The obligation of the defendant to deliver in good condition is limited by exacting the consideration of the perils of the road and the natural propensities of the animals themselves, and if, considering these, it failed to deliver them in the condition received, it was responsible for the damages, unless these were occasioned by the neglect of the plaintiff or his agent. See *Gilbert Bros. v. Ry.*, 156 Iowa 440. Under the instruction, it is only upon the failure of the defendant to deliver the cattle "in such condition"—that is, in as good condition as when received, considering the ordinary perils of the road and the natural propensities of the animals themselves—and the instruction, fairly construed, proceeds to say that even then these may not be recovered unless resulting without any negligence on the part of the plaintiff. The instruction was not likely to be misunderstood by the jury. Even though a train may move at a proper speed and make the trip on scheduled time, this would in no manner relieve the company of the consequences of any negligence in the manner of caring for the stock being transported during any necessary delay at stations or when moving on the road, and this is the purport of the two instructions.

III. The court submitted this interrogatory to the jury: "Was the injury to the stock caused by freezing?" A. "Yes." Appellants contend that the answer was contrary to

3. CARRIERS : live stock: damages from freezing: sufficiency of evidence.

the established facts and therefore evidenced such passion and prejudice that a new trial should have been awarded. See *Baldwin v. Ry.*, 63 Iowa 210; *Spicer v. Webster City*, 118 Iowa 561. This inquiry was not limited to the time the

car was standing on the sidetrack at Newport, as is assumed by appellant, but had reference to the time during transportation. Even if the record at the government weather office at St. Paul, eight miles away, indicated that the thermometer registered from 20 to 26 degrees above zero, there on the sidetrack the weather might have become much colder, and especially before reaching the destination at Lansing. It appeared that the car containing the cattle was exposed to a high wind at Newport for three or four hours, with the thermometer at from 20 to 26 degrees above zero, and it was growing colder; and it stood on another sidetrack later on, and even though a couple of veterinarians thought the cattle could not have frozen, other witnesses testified that they did, and it seems hardly necessary to add that there was sufficient evidence to sustain the finding.

IV. In instruction 9, the court advised the jury that complaint to the conductor during the progress of the train was sufficient notice to the company. This is said to be misleading with reference to the duty of the company and threw all the burden on it. Nothing but a vivid imagination could draw such an inference, for the instruction is subject to no other interpretation than that it advised as to what would be "sufficient notice to the company."

4. CARRIERS: live stock: damages from freezing: notice to carrier: instructions.

V. Evidence which should have been adduced in chief is said to have been introduced in rebuttal. Even if this were so, the order in which the evidence shall be received is discretionary with the trial court, and no abuse of such discretion appears in this case. The defendant introduced evidence tending to show that the car was overcrowded and that this occasioned injury to part or all of the cattle. On rebuttal, the defendant called witnesses who testified that they were familiar with cars such as that conveying the cattle, and that 62 head of cattle, such as those hauled, might be placed

5. EVIDENCE: expert testimony: overloading stock cars.

in a car without overcrowding. The objection seems to be that this was not proper as expert testimony, and not based on facts disclosed. The testimony related to matters not familiar to the ordinary juror. Witness Schwartzhoff was asked this question: "Assuming 62 head of mixed western cattle, running in sizes from calves of 126 lbs. to 1,000 lbs. in medium flesh, and the load weighing in the neighborhood of 22,000 lbs., would the car be overcrowded?" "A. No, sir." The witness had previously testified that he had never had any difficulty in loading a car such as that in question above the minimum capacity without crowding the stock. That he had put about 26 or 28 thousand pounds in a car and more; that the car would not be overcrowded when the weight is less than 25,000 lbs. On cross-examination the witness was asked: "In that assumption, how many calves would you include?" This was objected to on the ground that the question did not inquire the number of calves, but merely the number of cattle and the gross weight, and the objection was sustained. Q. "You can tell how many you would include that weighed 1,000 lbs., can't you?" The objection as incompetent, irrelevant and immaterial was sustained, and another question as to how many cattle weighing 800 lbs. he would include was asked, and a like objection sustained. Appellant contends that an indefinite question was asked and the defendant was denied the opportunity of testing the accuracy of the testimony given, or the basis upon which it rested. The objections might well have been overruled. It is to be said, however, that the witness had testified with reference to weight rather than number of cattle which might be loaded in the car, and as other witnesses had gone over the same ground in cross-examination, we are inclined to say that the error was without prejudice.

VI. A witness was asked this question: "Is Newport a place at which there is sufficient work to keep an engine?"

6. WITNESSES:
evidence:
cross-examination: overloading stock cars.

An objection as incompetent, irrelevant and immaterial was

**7. CARRIERS: live stock: duty to protect: lack of facilities.** sustained, and rightly so. The failure to keep an engine at that place was not alleged as a ground of negligence, and whether it was bound to do any switching there depended on the circumstances, and not upon the amount of switching to be done or whether it would have been feasible for defendant to have maintained a switching engine at that point. The obligation of the defendant was to exercise ordinary care for the protection of the cattle in view of the inclemency of the weather; and if, in view of having shunted the car on the sidetrack at Newport, it was necessary, in order to exercise such care, to unload the stock or to remove the car from that locality, the fact of not having sufficient business to require the constant use of a switch engine at that place would furnish it no excuse for not meeting its obligations. The ruling has our approval.

VII. The court instructed the jury that the undisputed evidence showed that the car of cattle was in the possession of the defendant between three and four hours at Newport

**8. TRIAL: instruction: assumption of truth of undisputed fact.** before being forwarded, and that, while there, the plaintiff notified an employee of the defendant, who was in charge of the station, that the cattle were suffering and should be unloaded, and advised that this was sufficient notice to require the defendant to take such steps as might be necessary to protect such cattle. Colsch testified to informing the operator in charge of the station of the condition of the cattle on two different occasions, and demanding their removal from the cars. This is not denied by such employee or any other witness, and no circumstances casting doubt upon the testimony were proven; and yet appellant contends that, as plaintiff was an interested witness, the issue as to whether he in fact gave the notice ought to have been submitted to the jury. Had any facts been shown tending to cast doubt on the testimony or the veracity of the witness, a different ques-

tion would be presented and the authorities cited by appellant somewhat in point. In *Joy v. Diefendorf*, 130 N. Y. 6, 27 Am. St. 484, evidence on the part of the defendant was sufficient to warrant the conclusion that a note had been obtained through fraud, and the testimony of good faith on the part of the purchaser by the cashier of a bank, though undisputed, merely carried that issue to the jury and was in line with the authorities holding that testimony, though undisputed, is not conclusive where doubt is cast on the veracity of the witness by circumstances appearing at the trial. That is not the situation here, and if the jury had found against the undisputed evidence of notice, it would have been good ground for a new trial, and therefore an issue was not raised for the jury, and the court rightly assumed the fact as testified by the witness.

VIII. Exception is taken to the fourth instruction, in that it recited that the car of cattle was on the sidetrack at Newport from about eight o'clock in the evening till eleven-twenty o'clock of the same night, and during that time, was "in the possession and under the control of the defendant as a common carrier." The car was taken by the defendant from the stockyards in South St. Paul a little after seven o'clock in the evening. The train stopped at Newport, about five miles distant, for about four hours, and all that this instruction indicates is that in the meantime the cattle were in the possession of the defendant as a common carrier. This is questioned on the ground that the plaintiff accompanied the car as caretaker; but that in no manner relieved the defendant of its obligations as a common carrier. Appellant contends that the verdict was contrary to the evidence, and therefore a new trial should be granted. A review of the evidence is not necessary, for it leaves no doubt that there was sufficient to carry the issues to the jury.

9. CARRIERS : live stock : shipper as caretaker : effect on carrier's possession.

IX. Complaint is made of the refusal of the court to give the following instruction:

"The plaintiff tendered his cattle for shipment on the evening in question and in doing so assumed the risk of the conditions of the weather at that time, or such changes as might suddenly occur by reason of sudden lowering of the temperature, therefore, if you find that the injury complained of was due to a sudden lowering of the temperature, or to the conditions of the weather at the time plaintiff tendered the shipment to the defendant, then you will find for defendant."

10. CARRIERS:
live stock:
shipper's
knowledge of
weather: un-
necessary ex-
posure to
weather by
carrier.

It is said in support of this that the plaintiff, when the cattle were loaded, was aware of weather conditions, and that there was no substantial change in the weather after the cattle were loaded, and the defendant was not bound to keep an engine at Newport so that the cattle could be unloaded. All this may be conceded; and yet the defendant had possession of the car as a common carrier and was required to exercise that degree of care for the protection of the stock that a reasonable, cautious and prudent man would under like circumstances. In switching the car and shunting it on the sidetrack, it was bound to exercise reasonable care in so placing it as not to unnecessarily expose the cattle to the inclemency of the weather; and if it did place the car where it was unnecessarily exposed, it was its duty to do what was necessary in the exercise of reasonable care to protect the stock while there, or, if the exercise of such care so required, to remove or enable the caretaker to remove the cattle from the car if reasonably essential for their protection. Even though cattle might not freeze with the thermometer at 26 degrees above zero, when exposed to the wind moving at 10 miles an hour, if allowed to remain in such condition a long time, we are not prepared to say that they might not be injured thereby and be more likely to freeze on the subsequent journey. Counsel rightly contend that the company was not required as a matter of law to maintain a switch engine at Newport, but it was

required to do all, in the care of the stock delivered to it for carriage, reasonable and necessary for its proper care and protection; and whether it was bound to place the car in a position where it might be unloaded, or remove it from its exposed condition in which it had placed it, depended entirely upon the ordinary care which was exacted from it. Of course, there might be circumstances under which cattle might freeze without fault on the part of the carrier; but in this case it was a fair question for the jury whether the defendant exercised ordinary care in the protection of the cattle during transportation, and if it failed so to do, whether the cattle were injured and lost in consequence of such omission.

There was no error, and the judgment is—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.