SAM R. GIBSON, Appellee, v. ADAMS EXPRESS COMPANY,
Appellant.

**APPEAL AND ERROR:** Objections after Verdict to Instructions.
1  Objections to instructions, when filed within five days after ver-
dict (37 G. A., Ch. 24), are not reviewable on appeal, unless
embodied in a motion for a new trial, a ruling obtained there-
on, and proper exceptions made to such ruling.   (Sec. 3705,
Code Supp., 1913.)

   PRESTON and SALINGER, JJ., dissent.

**CARRIERS:** Failure to Accompany Stock—Explanatory Evidence in
2  Absence of Plea in Avoidance.   If a carrier *knows* that the ship-
per is not, for some excusable reason, accompanying the ship-
ment, as contemplated by the contract, it must exercise the
care imposed by law, when there is no contract relative to a
caretaker.   It follows that, where the carrier pleads the care-
taker contract, and that the violation thereof by the shipper
by failing to accompany the stock was the proximate cause of
the injury, the shipper may, *without pleading in avoidance of
such contract*, introduce evidence that the train employees would
not permit him to ride on the train carrying the stock.   Espe-
cially is this true when the carrier's plea of proximate cause
was wholly unproven.   (See Sec. 3576, Code, 1897.)

*Appeal from Shenandoah Superior Court.*—G. B. JENNINGS,
Judge.

DECEMBER 19, 1919.

ACTION for damages to a car of horses shipped in a pal-
ace horse car of defendant from Shenandoah, Iowa, to East
Buffalo, New York.   Verdict and judgment for plaintiff.
Defendant appeals.—*Affirmed.*

*Denver L. Wilson* and *Thomas W. Keenan,* for appellant.

*Ferguson, Barnes & Ferguson,* for appellee.

STEVENS, J.—Plaintiff brings this action to recover damages to a shipment of horses from Shenandoah, Iowa, to East Buffalo, New York. The car in which the horses were shipped left Shenandoah at 2:40 P. M., on March 2, 1917, and arrived at destination between 1 and 2 o'clock A. M., March 5th. It is alleged in the petition that the usual and ordinary time consumed in the transportation of a car from Shenandoah to East Buffalo by the route followed is 28 hours.

The particular negligence charged is unusual and extraordinary delay, rough handling, and unnecessary exposure of the horses to cold and snow, resulting in serious damage thereto by rendering them unfit for market, and necessitating the sale thereof at much less than they would have brought, but for the negligence of defendant. The defendant answered, admitting some delay in the transportation of the car, but denied that the horses were damaged *en route,* and averred that the delay was due to storms and other causes wholly beyond the control of defendant; that it became necessary to unload the horses at Cleveland for feed, rest, and water, under the provisions of the Federal law; and that, if the horses were exposed to excessive cold, or were not properly fed, it was due to the negligence of the plaintiff. Defendant also averred that the shipment was made under the terms of two written contracts, referred to as Exhibits A and B, attached to the petition without further reference thereto, except the allegation that they were on file in the office of the secretary of the interstate commerce commission, and approved thereby. We will later refer to some of the provisions of these instruments.

I. Many rulings of the court below are complained of, most of which relate to alleged errors in the instructions

given.  The point is also made that the court erroneously

submitted the case to the jury under the

1. APPEAL AND
ERROR: objec-
tions after ver-
dict to in-
structions.

state statute; whereas, under the facts dis-
closed, the case was controlled by the law of
Congress.  No instructions were requested
by defendant, nor objections or exceptions taken to any
part of the charge until five days after the verdict was filed.
No motion for new trial was filed, and the written excep-
tions and objections to the instructions were never called
to the attention of, or passed upon by, the trial court.  Ow-
ing to the fatal illness of the judge who presided at the trial,
which followed shortly thereafter, he was never apprised
of the filing of the objections referred to.  Counsel for ap-
pellee challenges the right of plaintiff to have the alleged
errors in the instructions reviewed by this court, for the rea-
son that they were not called to the attention of, or passed
upon by, the lower court.  The contention here made will
be first considered in this opinion; and in this connection,
we desire, at the outset, to refer to the statutes heretofore in
force, and the practice adopted thereunder by this court.

Prior to the enactment of Section 3705-a of the Sup-
plement to the Code, 1913, exceptions to instructions given
were taken and preserved, if before verdict, under Code
Section 3707, and, if after verdict, under Section 3709 of the
Code of 1897.  The first of the above sections made it the
duty of the shorthand reporter to note exceptions to instruc-
tions given, but the grounds thereof did not need to be
stated.  The latter section, however, required exceptions to
the charge as a whole, or any part thereof, to be filed within
three days after the verdict and to specify the part of the
charge or instructions objected to, and the ground thereof.
The above sections of the Code, so far as the same related
to instructions given by the court, were repealed by the
thirty-fifth general assembly (Section 3705-c).  As we do
not have to deal, in this opinion, with instructions requested

and refused, we omit reference to the provision of the above sections of the statute relating to the refusal to give the same and express no opinion as to whether same was repealed by Section 3705-c or not. Nor have we considered Section 3708 of the Code in this connection. Section 3705-a required all objections or exceptions to instructions to be made before they were read to the jury, and to point out the grounds thereof specifically and with reasonable exactness. Provision was also made for filing exceptions after verdict, upon a proper showing that the error was not discovered before the charge was read to the jury. This section was repealed by Chapter 24, Acts of the Thirty-seventh General Assembly, which provides that:

"Either party may take and file exceptions to the instructions of the court or any part of the instructions given or to the refusal to give any instructions as requested within five days after the verdict in the cause is filed or within such further time as the court may allow and may include the same or any part thereof in a motion for a new trial, but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions asked and refused and objected to, and the grounds of such objections."

This case was tried after the enactment of the foregoing chapter, which was the only provision in force at the time of the trial prescribing the method and the time of taking and preserving exceptions and objections to instructions. It is the well-settled rule in this state that rulings of the lower court, complained of upon appeal, will be reviewed and considered only if it appears from the record that same was called to the attention of and passed upon by the trial court, and proper exception taken and preserved thereto. *State v. O'Donnell*, 176 Iowa 337, 351; *Scott v. Chicago, R. I. & P. R. Co.*, 160 Iowa 306; *Clement, Bane & Co. v. Drybread*, 108 Iowa 701; *Schulte v. M. & St. P. R. Co.*, 124 Iowa 191; *Mueller Lbr. Co. v. McCaffrey*, 141 Iowa 730; *State v.*

*Walters,* 178 Iowa 1108; *Vogt v. Chicago, R. I. & P. R. Co.,*
164 Iowa 158.   It is also the rule that rulings called to the
attention of, and passed upon by, the trial court will be
reviewed upon appeal, without the incorporation of the same
in a motion for new trial.   *Stewart v. Equitable Mut. Life
Ins. Co.,* 110 Iowa 528; *State v. Kelly,* 151 Iowa 264; *Under-
wood v. Oskaloosa Traction & Light Co.,* 157 Iowa 352; *Scott
v. Chicago, R. I. & P. R. Co.,* supra.

This court reviews rulings of the trial court, in ordi-
nary actions upon appeal, when proper objection has been
interposed and exception preserved thereto, for the purpose
of correcting errors.   The requirement that attention of the
trial court shall first be called to alleged erroneous rulings
is that correction may be made thereby, and the expense
and delay of appeal avoided.   Section 4105 of the Code
provides:

"A judgment or order shall not be reversed for an error
which can be corrected on motion in an inferior court, un-
til such motion has been there made and overruled."

Added significance attaches to this section by the re-
peal of Code Section 3707, which permitted exceptions to
instructions to be noted by the shorthand reporter.   Un-
less the giving of the instructions prepared by the court
upon its own motion, in obedience to statutory require-
ment, is treated as overruling objections subsequently filed
thereto, then clearly the errors alleged and relied upon by
appellant were never passed upon by the trial court, and
no opportunity was given thereto to correct the same.   It
is true that, in *Scott v. Chicago, R. I. & P. R. Co.,* supra,
and other decisions of this court, we held that Section 4105
was designed to cover errors arising after the verdict, such
as that it is excessive, or that there was misconduct of the
jury.   None of these decisions was rendered since the repeal
of Sections 3707 of the Code and 3705-a of the 1913 Supple-
ment thereto, and therefore they are not in conflict with the

view herein expressed. It will be observed that all objections and exceptions interposed or preserved to instructions under Chapter 24, Acts of the Thirty-seventh General Assembly, must be filed within five days after the filing of the verdict, and must point out specifically the part of the instruction or instructions complained of, and the ground of the objection must be stated. The legislature surely had some purpose in the enactment of these provisions, which are, in substance, identical with Section 3709, known in the Code of 1873 as Section 2789.

The thirty-eighth general assembly (Chapter 11) amended Code Section 3756, fixing the time for filing a motion for new trial, by striking out the word "three" and substituting the word "five" therefor. The importance and significance of this change in the statute is apparent, when considered in connection with the provisions of Chapter 24, Acts of the Thirty-seventh General Assembly, permitting objections and exceptions to instructions to be included in the motion for new trial. The legislature must have understood that some relation existed between objections and exceptions to instructions and a motion for new trial. The sole purpose of the defeated party in filing objections and exceptions to instructions, or to the refusal of the court to give those requested by counsel, is to obtain a new trial, or the correction of some manifest error in the instructions, if possible, without disturbing the verdict. It is idle to contend that the requirements of Chapter 24 were intended solely for the benefit of the litigants, or of this court upon appeal. So long as Section 3707 was in force, errors in instructions were corrected upon appeal by the granting of a new trial, even though no specific grounds therefor were stated when the exception was taken.

Recurring now to Section 4105, its application to exceptions and objections to instructions filed after verdict is manifest. The error complained of must be presented to

the court below for correction by an appropriate motion, which, in the present case, would have been a motion for new trial. No such motion was filed. No decision of this court is called to our attention by counsel, nor has a careful search of our official reports resulted in our finding one, in which exceptions and objections to instructions filed after verdict were reviewed upon appeal, unless called to the attention of the lower court by a motion for new trial. So far as the decisions of this court disclose, such has been the universal practice of the profession. Attention is called to the following cases, which are illustrative of this statement: *Parsons v. Parsons,* 66 Iowa 754; *Beems, Adm., v. Chicago, R. I. & P. R. Co.,* 58 Iowa 150; *Steyer v. Curran,* 48 Iowa 580; *Patterson v. Chicago, M. & St. P. R. Co.,* 70 Iowa 593; *Dean & Co. v. Zenor,* 96 Iowa 752; *Thompson v. Anderson,* 94 Iowa 554; *Riley v. Bell,* 120 Iowa 618; *Fish v. Chicago, R. I. & P. R. Co.,* 81 Iowa 280; *Vogt v. Chicago, R. I. & P. R. Co.,* supra.

Counsel for appellant placed some reliance upon *Scott v. Chicago, R. I. & P. R. Co.,* supra; but what was there said was based upon the record before the court, from which it appeared that exceptions to the instructions were noted by the shorthand reporter at the time of the trial. The advantage that would result to a litigant desiring delay, if the contention of counsel for appellant were to prevail, is obvious. Intolerable delays would follow. The errors complained of could have been corrected in the court below, and the relief sought (a new trial) probably secured, if the same had been called to the attention of the trial court. There is nothing in Chapter 24, Acts of the Thirty-seventh General Assembly, to indicate that the legislature contemplated, by the repeal of Section 3705-a, a departure so radical as that suggested by counsel. The requirements of Section 3705-a did not meet the approval of court or counsel. If sufficient time were allowed attorneys in which to

present objections to instructions, it resulted in too much delay in the progress of the trial, and attorneys frequently were unable, in the time allowed, to give necessary consideration to the instructions, and prepare objections thereto. By extending the time to five days after the filing of the verdict, these difficulties are overcome, and ample opportunity is given counsel to prepare and present objections thereto, on the submission of a motion for new trial, or other motion designed to secure a correction of errors committed. It may be that the objections and exceptions and the motion for new trial may be separately filed, but they would naturally be considered together. It is true that Chapter 24, Acts of the Thirty-seventh General Assembly, uses the words "exceptions" and "objections" apparently interchangeably; but this is without significance in the construction of this statute. An exception is defined by Code Section 3749 as "an objection, taken to a decision of the court, or person acting as the court, on a matter of law." The exceptions to instructions filed after verdict are, in reality and in effect, a challenge of the correctness thereof, and of the statement of the law applicable to the controversy involved. They are literally objections to the law as stated by the court. It is, therefore, our conclusion that, as the objections and exceptions to the instructions were not called to the attention of the trial court by appropriate motion for new trial, or otherwise, and a ruling secured thereon, none of the errors alleged therein can be considered or reviewed upon this appeal.

II. Section 8 of the contract, referred to in defendant's answer as Exhibit A, is as follows:

"Where said animals are accompanied by the owner or an attendant in his employ, the following further conditions shall apply, viz.: The shipper agrees to load, trans-

ship, and unload said animals at his own

**2. CARRIERS: failure to accompany stock: explanatory evidence in absence of plea in avoidance.** risk, the express company furnishing the necessary laborers to assist. The shipper shall take care of, feed, and water said animals, while being forwarded or transported, whether delayed in transit or otherwise, and the express company shall not be under any liability or duty with reference thereto, except in the actual forwarding thereof. The shipper further undertakes to see that all doors and openings in the cars in which said animals are shipped are at all times so closed and fastened as to prevent the escape of any of said animals or injury thereto, and the express company shall not be liable on account of the escape of any of said animals or any injury thereto, resulting from open doors or defective ventilation.

"Attendants, when transported free, will be permitted to ride only in the car in which the animals are transported, or in smoking cars, or second-class cars of the train, when furnished."

The other contract, referred to as Exhibit B, and designated "Attendant's Contract," also, among other things, provided:

"Whereas it is necessary that the owner or some person on his behalf shall accompany and take charge of said animals * * * which said animals are to be under the charge of the undersigned * * *."

No reply was filed to defendant's answer, but plaintiff was permitted to offer testimony for the purpose of excusing his failure to accompany the stock as caretaker. It is contended by counsel for appellant that, to entitle plaintiff to offer testimony upon this point, he must first plead in confession and avoidance of the contract. Section 3576 of the Code requires that, "where some matter is alleged in the answer to which the plaintiff claims to have a defense by reason of the existence of some fact which avoids the matter

alleged in the answer," same shall be set forth in a reply. While defendant attached copies of the two contracts to its answer, no particular reference was made to the parts thereof above referred to. It was, however, alleged in the answer that:

"If said animals were subjected to excessive cold and exposure, and were not properly fed, same was due to the negligence of the plaintiff and not of the defendant, and that, for that reason, plaintiff cannot recover."

The particular acts of negligence relied upon are not stated; but, impliedly, defendant's allegations of negligence referred to the failure of plaintiff to accompany and care for the stock *en route*, as authorized by the shipping and "Attendant's" contract; and we so treat it, for the purpose of this discussion. No motion for more specific statements of the particular acts of negligence relied upon was filed. The evidence, admission of which is claimed to have been erroneous, was offered by plaintiff as a part of his main case, and, stated briefly, is, in substance, as follows: That, when he arrived on the train with the horses at Chariton, Iowa, a station on the Chicago, Burlington & Quincy Railroad, he was informed by a stranger, who told him he was the agent of the Adams Express Company in charge of another car of horses, that he could not ride to Chicago on the train with the horses; that the conversation, or some of it, was in the depot, in the presence of the railroad ticket agent, who also informed him that he would have to go on a passenger train, and that he could not go on the train with the horses; that, when he arrived in Chicago, he went to an office, over the door of which there was a sign reading "Adams Express Co.," and inquired where the car containing the horses was; that the party in charge showed him a memorandum of the number of the car in which the horses were being transported, and informed him that it would be attached to a fast mail train; that he would have to take a

passenger train, and could not go with the horses; that he also inquired at the LaSalle Street Station, of the conductor of the New York Central train, on which he rode to Buffalo, whether he could ride with the horses, and was informed that he could not, as that train did not carry passengers.

The objection to the above testimony was that it was incompetent, irrelevant, immaterial, and hearsay, and not binding on the defendant, as it was not shown that any of the parties with whom he talked were authorized to represent it.   As already indicated, notwithstanding the fact that the contract was for an interstate shipment, the Federal statutes were ignored by the court, and the cause submitted without reference thereto.   An examination of the provision of the contract set out above will disclose that plaintiff did not, in specific terms, agree to accompany and care for the stock; but transportation was furnished him in contemplation of his doing so.   The rule in this state, as stated in *Westphalen v. Atlantic, N. & S .R. Co.*, 152 Iowa 232, is that:

"Where the owner or his agent accompanies live stock in their shipment for the purpose of giving it care and attention, the burden is on the plaintiff suing for damages alleged to have resulted from failure of the carrier to properly care for the animals in transportation to show that any injury or damage suffered during transportation was due to some fault on the part of the carrier.   *   *   *   But this rule relates only to burden of proof."

See *Thompson v. Anderson,* supra; *Grieve v. Illinois Cent. R. Co.,* 104 Iowa 659.   The reason for the rule is obvious.   By accompanying the stock, he is as well aware of the way it is handled and the operation of the train as the employees of the carrier in charge thereof.

A shipper, under the laws of this state, is not bound by a contract to perform any of the duties of the carrier; but we have frequently held that, if he accompanies the stock,

and assumes to perform certain duties of the carrier, such as providing feed and protection against storms and cold, so far as facilities are afforded him for that purpose, such fact becomes a material consideration in determining the liability of the carrier. As stated above, the burden of showing that the loss was due to the fault of the carrier in such case rests upon the shipper, in the first instance. *Winn v. American Exp. Co.*, 149 Iowa 259; *Hanley v. Chicago, M. & St. P. R. Co.*, 154 Iowa 60; *Westphalen v. Atlantic, N. & S. R. Co.*, supra.

If the defendant knew that the stock was unattended by plaintiff or someone on his behalf, it was its duty to give the necessary attention to the stock to prevent injury or damage thereto, the same as though no agreement existed. Michie on Carriers, Section 1945; *Chicago, B. & Q. R. Co. v. Williams*, 61 Neb. 608 (85 N. W. 832); *Patterson v. Missouri, K. & T. R. Co.*, 24 Okla. 747 (104 Pac. 31); *Thompson v. Railway Co.*, supra; *Mosteller v. Iowa Cent. R. Co.*, 153 Iowa 390.

It is, of course, not claimed by counsel for appellant that the defendant could in any way limit its liability as a carrier for damages resulting from its own negligence under the statutes of this state or any of the acts of Congress. It appears without dispute, from evidence offered on behalf of the defendant, that the horses arrived in and departed from Chicago on scheduled time, and in good condition. It was proper for plaintiff to offer proof that neither he nor anyone for him accompanied the horses as caretaker, and that defendant had notice thereof. A witness called by defendant testified that he was in its employ as a freight sorter and extra messenger, and that he accompanied the shipment in question from Chicago to East Buffalo, New York; that, when he took charge of the horses in Chicago, the ventilators were half open, and the horses appeared to be in good condition; that the weather conditions were bad between To-

ledo and Cleveland; that he caused the horses to be unloaded, fed, and watered at the stockyards in Cleveland; and that he inspected the horses at various stations *en route,* and saw them unloaded at Cleveland and Buffalo. No evidence was offered by defendant tending to show that the horses were injured because of the failure of plaintiff to accompany them as caretaker, but, on the contrary, evidence was offered, as above stated, for the purpose of showing that the horses were properly looked after, and attended by a special employee of defendant from Chicago to their destination. We think, therefore, that the evidence was admissible without a plea of confession and avoidance, for the purpose of showing that plaintiff did not accompany the stock, and that notice was imparted to the defendant of that fact, and also to repel the allegation that plaintiff was negligent in failing to exercise the privilege conferred by his contract. Certainly, it cannot be said that plaintiff, under the evidence, negligently failed to accompany the car from Chicago to its destination. The agent of defendant with whom he talked in Chicago had a memorandum of the number of the car in which the horses were being transported, and apparently had full information as to the route and movement thereof, and the jury may well have found that the information given to plaintiff was in the line of his duty as such agent. Ordinarily, at least, a ticket agent at a railway station is authorized to direct passengers upon what trains they may, or are forbidden to, ride. Further, we fail to see wherein this evidence was, in any event, prejudicial. The duty rested upon the defendant to properly care for, protect, and transport the horses, the same as though no contract had existed, and not to keep them in the car in excess of 36 hours without unloading, feeding, and giving them a period of rest. *Thompson v. Railway Company,* supra; *Westphalen v. Atlantic, N. & S. R. Co.,* supra; *Winn v. American Exp. Co.,* supra; *Colsch v.*

*Chicago, M. & St. P. R. Co.,* 171 Iowa 78; *Powers v. Chicago, R. I. & P. R. Co.,* 130 Iowa 615; *Mosteller v. Iowa Cent. R. Co., supra.*

Had plaintiff accompanied the horses, he would have had no control over the movement of the train, and could not have prevented the delay, without which the horses, unattended, might have reached their destination in good condition. When the horses were unloaded at Cleveland, they had been on the cars about 36 hours, which, according to plaintiff's testimony, exceeded the time usually and customarily consumed in completing a shipment from Shenandoah to East Buffalo. Conceding, without deciding, that, if the only purpose for which the testimony in question was offered was to avoid the provisions of the shipping contract, a plea in confession and avoidance would be necessary, still, if the testimony was admissible for some other purpose, the court could not properly exclude it on account of the failure to interpose this plea. In our opinion, the evidence was clearly admissible for the reasons stated, and if the conversation at Chariton, or any part of it, was improperly admitted, it was without material prejudice to defendant.

III. While plaintiff in his petition alleged that the car was billed from Shenandoah, Iowa, to East Buffalo, New York, thereby indicating its character as an interstate shipment, the defendant, which now complains of the failure of the court to take notice of the Federal statutes, and to submit the case to the jury in accordance with the provisions thereof, at no time during the trial suggested this fact or requested instructions to that effect, or otherwise sought to have the cause thus tried and submitted. As we cannot consider or review the objections and exceptions filed to the instructions after verdict, wherein this question is variously raised, we have nothing before us for consideration

upon this point.    It necessarily follows that the judgment
of the court below is—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.

SALINGER, J. (dissenting).    I. The only relevant change
in statute law relating to exceptions to instructions is that,
while it was once necessary to take these exceptions before
the jury was charged, they may now be taken within five
days after verdict.    The majority holds that, though the
exceptions be filed within statute time, the charge of the
court may not be reviewed on appeal unless these exceptions
are called to the attention of the trial court, either by appro-
priate motion for new trial, or in some manner additional
to the mere timely filing of such exceptions.    While the new
statute permits the taking of the exceptions after verdict,
it still permits their being taken before the jury is charged.
It has never been claimed that, if then taken, it would be
necessary to proceed as the majority requires.    The argu-
ment is that the later filing makes it impossible to change
the instructions, even if the exceptions are approved of,
and that, unless there be a motion for new trial, the late
filing permitted by statute would be idle.    It seems to me
such argument overlooks, at least, the following undeniable
propositions: (1) The legislature may not be interfered with
by the courts, even if it enacts an illogical statute.    (2) It
is presumed a statute is intended to be effective, and that
the legislature intends that statutes enacted by it are to
be obeyed. (3) When the last statute on exceptions was
enacted, the legislature knew that Section 4105, Code of
1897, provided that:

"A judgment or order shall not be reversed for an error
which can be corrected on motion in an inferior court, until
such motion has been there made and overruled."

It knew, as well, that Code Section 4106 provides that:

"The Supreme Court on appeal may review and reverse

any judgment or order of the superior or district court, although no motion for a new trial was made in such court."

Since, then, the new statute does not command that exceptions shall be included in a motion of any kind, and merely gives option to include the exception in a motion for new trial, it must have been intended to enact an extension of Section 4106, which, as distinguished from Section 4105, deals specifically with appellate review where there is no motion—that it must have been intended it should not be essential to a review of instructions given that any motion be made after verdict.

This leaves nothing but the argument that such was not the legislative intention, because it cannot have been intended that exceptions should be filed at such time and in such manner as that the filing could effect nothing. That argument assumes two things: (1) That the exceptions are filed for the sole purpose of obtaining a new trial. (2) That, in the absence of a motion, the court can do nothing, because, even if it holds with the exceptions, it cannot, after verdict, change the instructions, and that, where there is no motion for new trial, it cannot give new opportunity for correct instructions by means of granting a new trial. The answer is that the exceptions are not a basis for obtaining a new trial below, but to obtain one on appeal, and that—if that be a material consideration—the trial court can grant a new trial on its own motion.

II. I do not overlook the argument that the "exceptions" are not only exceptions, but are, as well, "objections," and that, whatever absurdity there might be in requiring a ruling upon an exception so that one might take an exception to the ruling on the exception, there is nothing absurd in requiring an exception to a ruling on a mere objection. The most casual examination, even, must, it seems to me, show clearly that the statute does not deal with objections in their true sense, but with exceptions in their technical

sense.    The provision is that either party may take and file exceptions, and that the exceptions shall specify the part of the instructions excepted to.    It is after this that the word "objection" appears for the first time, and it is in the statute as a qualification or definition of the requirement to specify, and the provision is that one who files these exceptions must state specifically the grounds "of such objections," manifestly meaning the reasons why the exception is taken.

### 2-a

It is not amiss to add, even at the cost of repetition, that too much is being made of the claim that an exception lodged within the time permitted by statute is yet ineffectual if it cannot avail to obtain a new trial below.    If the fact that new trial is not sought, and is, therefore, not obtainable, is a bar to appellate review, then many of our decisions should be promptly overruled.    If testimony be received against the objection of a party, and due exception is taken thereto, in the present state of our case law, the reception of such testimony will be reviewed on appeal, though no motion for new trial be made.    Now, unless all said cases are overruled, it is manifest that the fact that, if such motion were made below, new trial might be granted, and thus a necessity for an appeal be obviated by that fact, is not a bar to appellate review.

III. It is, of course, true that appellate review is permitted in such case, because the attention of the trial court was called to the claim that such testimony should not be received.    And in the final analysis, the controlling question in this case is whether it may be said that filing the exceptions also calls the attention of the court to the claim that its charge is erroneous in specified particulars. It is in this way that Sections 4105 and 4106 become harmonious.    Both statutes demand that the court shall, in some manner, be advised that there is objection, before ap-

pellate review may be had. And Section 4106 but provides that the doing of certain things constitutes such advisement as that it is unnecessary to repeat the complaint by motion. Why was not the error in the charge called to the attention of the court when, within the time permitted by statute, specific exceptions were filed to the charge? As said, there would be no claim that anything beyond filing the exceptions was required as a basis for appeal if the exceptions had been filed before the jury was instructed. The statute itself provides for nothing except "taking and filing exceptions." Why is not the taking and filing after verdict, but within the time allowed by statute, just as much the calling of attention as to take and file the exceptions before the charge is delivered? There may be a difference in what can be done at the one time, as distinguished from the other, but that does not make a difference in the fact that the filing is as much notice of complaint, if made after verdict, than if made before verdict. The law advises the trial judge that, where no exceptions are filed before the jury is instructed, that may be done at any time within five days after verdict. In that sense, he asserts, by giving the instructions, that, at that time he is of opinion that the charge is not vulnerable to objection. He is advised to examine the record in the case during a period of five days, or a longer period, if he extends the time, to see whether, notwithstanding his advance holding, it is claimed that the instructions are objectionable. Unless we are to abrogate all elementary rules on constructive notice, the judge, during these five days, is, as matter of law, advised, the moment exceptions are filed, that they are presented, and are for his action. In one word, then, the moment the exceptions are filed within statute time, they are called to the attention of the court. Whether the court acts or can act upon them or not, under the words of the statute itself, their filing constitutes a

lodgment of exceptions to the instructions, and creates a bill of exceptions on that head for the purposes of appeal. It follows that the matter falls within Section 4106, and that no motion is needed to make a basis for appellate review.

I am authorized to say that Mr. Justice Preston concurs in this dissent.