A. S. WIEDERIN, Appellee, v. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant.

No. 40805.

JUNE 20, 1931.

Lee & Robb, James C. Davis, Jr., and Davis, McLaughlin & Hise, for appellant.

W. C. Saul & W. I. Saul, for appellee.

WAGNER, J.—In this action, the plaintiff asks damages for

the value of eleven hogs which died during the period of transit from Carroll, Iowa, to Chicago. On October 15, 1928, plaintiff delivered to the defendant-company at Carroll, for shipment to Lawler Brothers & Company at Chicago, 26 head of hogs and 16 head of cattle. At the time of making the shipment, plaintiff and defendant entered into a written contract covering said shipment. This contract was the uniform live stock contract and entitled plaintiff to ride on the train as a care taker, and plaintiff took advantage of this privilege. Among other things, the contract provided that the shipper, at his own risk and expense, shall load and unload the live stock into and out of the car. The 26 hogs and 16 cattle were loaded into a 36 foot stock car, which was furnished by the defendant. The defendant took no part in the loading of the car. As the car was loaded, it stood east and west. The hogs were first placed in the west end of the car in the space between the west edge of the door and the west end of the car. The door was 5 or 6 feet wide. The cattle were placed in that portion of the car not occupied by the hogs and a partition constructed between the cattle and the hogs. The plaintiff estimated that the hogs would average in weight 400 pounds or more. The hogs were brought in a truck from plaintiff's farm some miles in the country to the stock yards of the defendant-company at Carroll. The hogs were corn fed and had been kept in a pen and were well fattened. A chute was used in loading the hogs into the truck; the hogs had to be worked from the pen into the chute and it took about 20 minutes to load the truck. In arriving at the stock yards at Carroll, the hogs were caused to go from the truck down a chute and were then driven through the yards and up another chute into the car.

Plaintiff in his petition plants his cause of action not upon the contract but solely in tort upon claimed negligence of the defendant-company, and he alleges in his petition that, because of the negligent rough handling of the train in which the car was transported to Chicago eleven head of the hogs in said shipment were killed in transit. The allegations of plaintiff's petition were denied by the defendant. At the close of plaintiff's evidence, and also at the close of all of the evidence, the defendant moved for a directed verdict upon the following grounds: (1) that the plaintiff was guilty of contributory

negligence as a matter of law; (2) that the evidence is insufficient to establish the alleged negligence of the defendant-company; (3) that the evidence is insufficient to show that the alleged negligence of the defendant-company, if same existed, was the proximate cause of the death of the hogs. This motion was overruled and the court submitted the case to the jury, and that body returned a verdict in favor of the plaintiff for the value of the eleven dead hogs and judgment was rendered accordingly. From this judgment, the defendant appeals. The appellant complains that the trial court erred in the overruling of its motion for a directed verdict, and while some other matters are urged as error, the ruling on the motion for a directed verdict is the major, and we think the decisive, question in the case, and therefore, we will proceed to the consideration of said question.

It is the repeated pronouncement of this court, that where a shipment of live stock is accompanied by the shipper or some one representing him, as a caretaker, the burden of proof is upon the plaintiff to show that the damage for which recovery is sought was caused by the carrier's negligence. See Vincent, Albin & Strahl v. Hines, 198 Iowa 1224; Westphalen v. The Atlantic, Northern & Southern Railway Company, 152 Iowa 232; Gibson v. Adams Express Company, 187 Iowa 1259; Colsch v. Chicago, Milwaukee & St. Paul Railway Company, 149 Iowa 176; McManus v. Chicago Great Western Railway Company, 138 Iowa 150. The plaintiff is also confined in his proof to the ground of negligence specifically alleged in his petition. Stone v. Chicago, Rock Island & Pacific Railway Co., 149 Iowa 240. Therefore, assuming that the plaintiff's proof is sufficient to establish his freedom from contributory negligence, there remain the questions whether the defendant-company was negligent in the rough handling of the train, and whether said negligence, if any, was the cause of the death of the hogs. We now turn to the evidence for the determination of these questions. The train in which the car containing the hogs was transported left Carroll on October 15th at 9:35 P.M. and arrived at the Union Stock Yards in Chicago on October 16th at 11:55 P.M. The plaintiff did not see the hogs after they were loaded in the car at Carroll. Upon arrival in Chicago, it was ascertained that eleven of the shipment were dead. The plaintiff does not

contend that there was any rough handling of the train from Clinton to Chicago, but his testimony relates to the journey between Carroll and Clinton. His testimony, in substance, is that at station stops, and while leaving and taking on cars, and also while en route, there was jarring and jolting of the caboose in which he was riding, which nearly knocked him out of the seat at times; that the jarring and jolting were worse than on any previous trip which he had taken; that on one occasion, near Tama, while eating a lunch, there was "such a jar that we bumped the seat ahead of us and broke our thermos bottle." In his testimony as to the rough handling of the train, the plaintiff is somewhat corroborated by Heidenreich, another shipper, who was on the same train, and who testified:

"I had cattle and hogs on this train. My stock came through fairly well. On a long freight train ¾ mile long you always get severe jolts and bumps riding in the caboose and that is what happened on the night of this trip between Carroll and Clinton on the way into Chicago."

The train men in charge of the train, all testified, in substance, that there was no rough handling or unusually severe starting, or stopping, or jolting or jarring of the train. The uncontradicted evidence is that there were no scratches or bruises upon the hogs. In Vincent, Albin & Strahl v. Hines, 198 Iowa 1224, where the evidence as to the rough handling of the train was stronger than in the instant case, we said:

"On the question of rough handling of the train, the evidence is slight, but we think it was sufficient to justify the submission to the jury of the issue of appellant's negligence."

For reasons hereinafter given, we find it unnecessary to determine whether the evidence as to the ground of negligence alleged, to wit, the rough handling of the train, was sufficient for the submission of said question to the jury.

 Assuming, without deciding, that the evidence was sufficient to establish negligence on the part of the appellant-company in the handling of the train, as charged, does the evidence establish that the handling of the train, as claimed by the plaintiff, was the proximate cause of the death of the hogs? The uncontradicted evidence is, that the cause of the death of the hogs

was acute congestion of the lungs. Is it shown that the handling of the train is the cause of the congestion of the lungs which killed the hogs? We answer in the negative. One of the experts testified as a witness: "From my experience as a Veterinarian it is impossible to cause acute congestion of the lungs by jarring or jolting." Another testified: "It is not possible to cause congestion of the lungs by application of a jerk, or jar or something of that sort." The testimony is to the effect that a hog in the pen fattened on corn is more susceptible to congestion of the lungs than a range hog, or one accustomed to taking exercise; that the lungs of the former are far inferior in development as compared with those of the latter; that the reason for this want of development in the former is lack of exercise; that exertion is the cause of congestion of the lungs. There is much testimony to the effect that the hogs were overcrowded in the car. If this be true, then plaintiff was guilty of contributory negligence, as the plaintiff loaded the hogs in the car. But we need not and do not pass upon that question. It will be observed from the foregoing, that the cause of the death of the hogs was congestion of the lungs, and that the cause of congestion of the lungs is exertion. The evidence as to what exertion caused the death of the hogs is circumstantial. It is the plaintiff's theory, that the exertion of the hogs through the claimed rough handling of the car was the cause of the congestion of the lungs, while it is the defendant's theory that, prior to the commencement of the transportation and before they were loaded by the shipper, they were subjected to an unusual and unaccustomed amount of exertion which resulted in their death. It must be conceded that there is much more evidence of exertion of the hogs at and before their loading into the car than there is during the period of their transportation. The hogs of the witness Heidenreich, transported on the same train, were uninjured. If plaintiff's contention as to the rough handling of the train be true, it is possible that said usage was the cause of the death of the hogs but it is also possible that the exertion of the hogs at and before being loaded into the car, as shown by the evidence, was the cause of the death of the hogs. Which of the two theories is the more plausible or reasonable is not for us to determine. The circumstantial evidence as to the cause of the death of the hogs must be something more than

consistent with the plaintiff's theory. It must exclude every other reasonable hypothesis. See Dingmon v. Chicago & Northwestern Railway Company, 194 Iowa 721; Neal v. The Chicago, Rock Island & Pacific Railway Company, 129 Iowa 5; Gibson v. Adams Express Company, 187 Iowa 1259; Eisentrager v. Great Northern Railway Company, 178 Iowa 713; Field v. Southern Surety Co. of New York, 211 Iowa 1239, and cases therein cited. As stated in Neal v. The Chicago, Rock Island & Pacific Railway Company, 129 Iowa 5:

"Verdicts must have evidence to support them, and the jury will not be permitted merely to conjecture how the accident occurred. In matters of proof they are not justified in inferring from mere possibility the existence of facts. Wheelan v. Chicago, M. & St. P. R. Co., 85 Iowa 167. If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for."

Also, as stated in Field v. Southern Surety Co. of New York, 211 Iowa 1239:

"Verdicts may not be based on mere surmise or conjecture. The circumstantial evidence must be something more than consistent with appellant's theory as to how the accident occurred. It must exclude every other reasonable hypothesis."

The appellee argues: "The jury were justified in finding that the over-exertion which killed these hogs could come from their being transported on the railroad as easily as they could find that it came from their being transported in trucks," etc. This may be conceded and still plaintiff must fail for lack of proof for if the circumstantial evidence be in equipoise then the plaintiff must fail. As stated in Eisentrager v. Great Northern Railway Company, 178 Iowa 713, "where the proof is equally balanced or the facts are as consistent with one theory as another, plaintiff has not met the burden which the law casts upon him." To permit the jury, under the record in this case, to find that the death of the hogs was the result of any claimed rough handling of the train while they were in transit would be to permit a verdict to rest upon mere speculation and conjecture.

The court should have sustained appellant's motion for a directed verdict. The judgment of the trial court is hereby reversed.—Reversed.

FAVILLE, C. J., and STEVENS, DE GRAFF, ALBERT, MORLING, KINDIG, and GRIMM, JJ., concur.